REIST v BAY CIRCUIT JUDGE

Docket No. 56919. Argued June 6, 1975 (Calendar No. 19).—Decided
   April 1, 1976.

   The parental rights of Carol Reist were terminated as to one
   child, and another was made a temporary ward of the juvenile
   court. Her requests for appointment of counsel and provision of
   a transcript at public expense for her appeal of right to the
   circuit court were denied by the Bay County Probate Court,
   Clare F. Carter, J., and the Bay Circuit Court, Leon R. Dardas,
   J., on the ground that they had no authority to grant such
   requests. Plaintiff Reist commenced an action in the Court of
   Appeals against the circuit and probate judges for superintend-
   ing control to compel appointment of counsel and provision of a
   transcript at public expense (Docket No. 23763). The Supreme
   Court granted leave to appeal prior to decision by the Court of
   Appeals. *Held:*

   Remanded to probate court for appointment of counsel and
   furnishing of transcript.

   Justice Levin, Chief Justice Kavanagh and Justice Williams
   concurring, would hold that:

   1. Because of the nature of parental rights termination
   proceedings and of the basic, fundamental nature of the paren-
   tal relationship in our society, the Due Process Clause requires
   assignment of counsel at public expense for an indigent for
   hearings when the state seeks to terminate his parental rights.
   The court rule (JCR 1969, 6.3[A][2][b]) requiring the appoint-

---

REFERENCES FOR POINTS IN HEADNOTES

[1-8, 10] 16 Am Jur 2d, Constitutional Law § 573.
   21 Am Jur 2d, Criminal Law §§ 222, 318, 320.
   Accused's right to counsel under the Federal Constitution—Su-
   preme Court cases. 18 L Ed 2d 1420.
[3-8, 10] 47 Am Jur 2d, Juvenile Courts and Delinquent and Depen-
   dent Children § 38.
   59 Am Jur 2d, Parent and Child §§ 10, 42.
   Right to and appointment of counsel in juvenile court proceedings.
   60 ALR2d 691.
[4-8, 10] 4 Am Jur 2d, Appeal and Error §§ 136, 345.
[9] 16 Am Jur 2d, Appeal and Error § 539.

ment of counsel for indigents at such hearings is constitutionally based.

2. The Equal Protection Clause requires that indigent parents be provided counsel for prosecuting the first appeal as of right to the circuit court and such transcripts as counsel requires.

3. Upon entry of an order terminating parental rights the court shall of record advise parents whose rights are terminated that they have a right to appeal the order of termination to the circuit court and that if they are indigent the court will appoint counsel at public expense to represent them and will supply transcripts of the proceedings. A request for counsel may be made informally and shall be deemed timely if made orally or in writing not later than 20 days after the entry of the order of termination. A timely request for counsel shall toll the time for taking an appeal until entry of an order appointing or denying counsel and for two weeks thereafter. An order appointing counsel shall, whether or not the indigent parent makes a separate request for transcripts, direct that the court stenographer supply counsel with such transcripts of the probate court neglect and termination proceedings as counsel may require. If the court enters an order denying counsel, it shall notify the parent of his right to appeal that decision.

4. Until the Legislature provides otherwise, the cost of assistance is allocated to the county.

Justice Coleman, with whom Justice Fitzgerald concurred, agreed that indigents whose parental rights have been terminated should be provided an attorney and a transcript at county expense if they appeal to circuit court, but would base the conclusion on statute and court rule, not on constitutional analysis. She would hold that:

1. The Juvenile Court Rule providing for appointment of counsel to represent indigent parents at hearings which may involve termination of parental rights is judge-made, and its scope may properly be provided judicially by interpreting "hearings" to include appeals to circuit court.

2. Because the statute governing appeals in such cases requires that the appeal be on a transcript or settled record, a transcript must be provided, if the parent cannot afford one, so that the statute can be satisfied.

3. There is no statutory authority for a state agency to pay the fees, and the Legislature has not provided for state assumption of such costs, so payment must be made by the unit of

government which funds the tribunal, by order of the probate court.

Justice Coleman believes that a broadly sweeping constitutional decision, using a criminal-law focus on loss of personal liberty to analyze proceedings designed to protect the child, is unnecessary when the issue may be resolved by court rule and statute.

Justice Lindemer, in a separate opinion, concludes that the plaintiff has no constitutionally protected right to appellate counsel in this matter, and states that the precedents cited for the constitutional right are either from criminal cases, and therefore dicta, or did not involve the right to counsel on appeal. The constitutional decision will open the doors in ways presently unexpected.

Justice Ryan did not participate.

Remanded to probate court for appointment of counsel and furnishing of transcripts.

SEPARATE OPINION

KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ.

1. CONSTITUTIONAL LAW—RIGHT TO COUNSEL—DUE PROCESS—EQUAL PROTECTION.

*There is little difference between the due process and equal protection analyses in right-to-counsel cases: whether the issue is "fairness" under the Due Process Clause or "disparity in treatment" under the Equal Protection Clause, the analysis is in terms of the need for and importance of counsel in making meaningful the rights to trial and access to the appellate process (US Const, Am XIV).*

2. CONSTITUTIONAL LAW—RIGHT TO COUNSEL—PUBLIC ASSISTANCE.

*Indigent persons cannot expect public assistance to prosecute and defend civil suits whenever a liberty or property interest is at stake, but they have a right to such assistance when the interest at stake is of basic importance in our society, involving a fundamental human relationship.*

3. INFANTS—CONSTITUTIONAL LAW—RIGHT TO COUNSEL—PUBLIC ASSISTANCE—TERMINATION OF PARENTAL RIGHTS.

*Because of the nature of parental rights termination proceedings and of the basic, fundamental nature of the parental relationship in our society, the Due Process Clause requires assignment of counsel at public expense for an indigent for hearings when the state seeks to terminate his parental rights (US Const, Am XIV; Const 1963, art 1, § 17).*

4. INFANTS—CONSTITUTIONAL LAW—RIGHT TO COUNSEL—PUBLIC AS-
   SISTANCE—TERMINATION OF PARENTAL RIGHTS—APPEAL.

   *Indigent parents, in proceedings to terminate their parental
   rights, are entitled to meaningful and adequate access to the
   appellate process, and this right can only be achieved through
   representation by counsel and providing counsel with necessary
   transcripts; the Equal Protection Clause requires that indigent
   parents be provided counsel for prosecuting the first appeal as
   of right to the circuit court and such transcripts as counsel
   requires.*

5. INFANTS—TERMINATION OF PARENTAL RIGHTS—RIGHT TO COUNSEL—
   ADVICE OF RIGHTS.

   *A parent whose parental rights have been terminated is entitled
   to be advised on the record that he has a right to appeal the
   order of termination to the circuit court and that if he is
   indigent the court will appoint counsel at public expense to
   represent him and will supply transcripts of the proceedings; in
   the absence of such advice there could be no assurance either
   that he knew he had such a right or that he had waived it.*

6. INFANTS—TERMINATION OF PARENTAL RIGHTS—RIGHT TO COUNSEL—
   PUBLIC ASSISTANCE—EXPENSE.

   *The question whether the state or the county shall bear the
   expense of providing constitutionally required services to indi-
   gent persons is primarily for the Legislature to resolve, but
   until it acts specifically, the financial burden of providing such
   assistance to indigent parents in proceedings to terminate
   parental rights is allocated to the county as the unit of govern-
   ment which funds the tribunal in which the indigent parent is
   called upon to defend his right to the continued custody of his
   child (MCL 712A.25; MSA 27.3178[598.25]).*

SEPARATE OPINION

COLEMAN and FITZGERALD, JJ.

7. INFANTS—TERMINATION OF PARENTAL RIGHTS—RIGHT TO COUNSEL—
   COURT RULES.

   *Indigent parents whose parental rights have been terminated, if
   they appeal to circuit court, should be provided appellate
   counsel and a transcript at county expense on the basis of
   statute and court rule (MCL 712A.22; MSA 27.3178[598.22], JCR
   1969, 6.3[a][2][b]).*

8. Infants—Termination of Parental Rights—Inconsistent Interests—Right to Counsel.

   *Termination of parental rights determines as a matter of fact and of law that the interests of the parent and the child are inconsistent; the child has a status as an individual citizen with rights separate and distinct from a parent found to be neglectful or abusive and appointment of appellate counsel for the parent may not be presumed to protect the rights of the child.*

9. Constitutional Law—Due Process—Right to Appeal.

   *Due process has not been held by the United States Supreme Court to require a right of appeal in any civil case, much less the right to appointed counsel and free transcript on appeal.*

Separate Opinion

Lindemer, J.

10. Infants—Termination of Parental Rights—Appeal and Error —Right to Counsel.

   *There is no constitutionally protected right to appellate counsel for indigent parents whose parental rights have been terminated; the Equal Protection Clause does not require absolute equality and once parental rights have been terminated, the constitutional rights of the parents do not remain in the same posture as before the termination.*

*Gary J. Kolb, Thomas J. Blackmar,* and *Jan Armon,* Legal Services of Eastern Michigan *(Rose Marie Adamo,* Genesee County Legal Aid Society, of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone* and *William K. Basinger,* Assistants Attorney General, for defendants.

*Amici Curiae:*

*Alan W. Houseman, Robert A. Burt,* and *David L. Chambers* for Michigan Legal Services, Inc.

*James C. Zeman* and *George G. Matish* for Legal Aid and Defender Association of Detroit.

*Robert P. Allen,* Civil Counsel, and *John F. Ross, Jr.,* Assistant Civil Counsel, for Oakland County.

*Eugene G. Wanger* for the Michigan Association of Counties.

LEVIN, J. On a finding of neglect,[1] the probate court terminated Carol Reist's parental rights to her 2-1/2 year old son, Richard. Her one-year old son, Robert, was made a temporary ward of the court and termination proceedings were set to begin in six months absent a showing of fitness by Reist.

Reist, who is indigent, was appointed counsel pursuant to a court rule[2] for the probate court

---

[1] MCLA 712A.2(b)(1) and (2); MSA 27.3178(598.2)(b)(1) and (2) provide:

"Sec. 2. Except as provided herein, the juvenile division of the probate court shall have:

\* \* \*

"(b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county

"(1) Whose parent or other person legally responsible for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical or other care necessary for his health, morals, *[sic]* or who is deprived of emotional well-being, or who is abandoned by his parents, guardian or other custodian, or who is otherwise without proper custody of guardianship; or

"(2) Whose home or environment, by reason of neglect, cruelty, drunkeness, criminality or depravity on the part of a parent, guardian or other custodian, is an unfit place for such child to live in, or whose mother is unmarried and without adequate provision for care and support."

[2] JCR 1969, 6.3(A)(2)(b) provides:

"(b) *For Other Parties:* Unless waived as provided by Rule 6.2, counsel shall be appointed on the court's own motion to represent the parents, guardian, or custodian of the child charged with offense against the child at hearings which may involve termination of their rights when legal aid or public defender counsel is not available, and they are financially unable to employ counsel to represent themselves. The court may, upon request therefor, when legal aid or public defender counsel is not available and they are financially unable to employ counsel to represent themselves, appoint counsel to represent

proceedings. She requested appointment of counsel for her appeal as of right to circuit court[3] and asked that a transcript of the probate court proceedings be provided at public expense. Both the probate and circuit judges denied her requests on the ground that they were without authority to provide the assistance she sought.[4]

The issues are whether an indigent parent is entitled to transcripts of neglect and termination proceedings and to assigned counsel on appeal as of right to circuit court from a decision terminating parental rights.

We conclude that the Equal Protection Clauses of the United States and Michigan Constitutions[5]

---

such persons at other hearings conducted under provisions of the juvenile code or these rules."

[3] MCLA 712A.22; MSA 27.3178(598.22) provides:

"Appeal may be taken to the circuit court by the prosecuting attorney or any person aggrieved by any order of the juvenile division of the probate court, in the same manner as from other orders or judgments of the probate court as provided by section 45a of chapter 1. The pendency of an appeal shall not suspend the order unless the circuit court shall specifically so order. An application for a delayed appeal from any order or judgment shall be filed within 6 months after entry thereof."

MCLA 701.45a; MSA 27.3178(45.1) provides:

"(1) In all cases not specifically prohibited by statute, any person aggrieved by any order, sentence, or judgment of a judge of the probate court may appeal therefrom to the circuit court for the county in which the order, sentence, or judgment is rendered, except that condemnation cases under Act No. 40 of the Public Acts of 1956, as amended, being sections 280.1 to 280.624 of the Michigan Compiled Laws, and adoption proceedings under chapter 10 of this act, as amended, shall be appealable directly to the court of appeals.

"(2) Notice of appeal shall be given to all interested parties as provided by rules of the supreme court. Appeals from the probate court shall be on a written transcript of the record made in the probate court or on a record settled and agreed to by the parties and approved by the court. The appeals shall not be tried de novo.

"(3) All appeals to the court of appeals from judgments entered by the circuit court on appeals from the probate court shall be by application."

[4] We granted an application for bypass of the Court of Appeals of a complaint for superintending control filed as a class action.

[5] US Const, Am XIV; Const 1963, art 1, § 17.

require that transcripts and counsel be furnished at public expense to an indigent parent desiring to appeal as of right a decision terminating parental rights.

## I

The constitutional right to assignment of counsel at public expense was first recognized and developed in criminal cases. The germinal case is *Powell v Alabama,* 287 US 45, 71; 53 S Ct 55; 77 L Ed 158; 84 ALR 527 (1932), where the United States Supreme Court declared that under the circumstances in the case before it of ignorance, illiteracy, public hostility, imprisonment and difficulty of communication with friends and family, "the necessity of counsel was so vital and imperative that the failure of the trial court to make an effective appointment of counsel was * * * a denial of due process within the meaning of the Fourteenth Amendment".

The Court's holding was limited:[6] "Whether this would be so in other criminal prosecutions, *or under other circumstances,* we need not determine." (Emphasis supplied.) But the reasoning— based on the due process right to a hearing— adumbrated the scope of the underlying principle:

"[I]n any case, civil or criminal", a hearing historically includes "the right to the aid of counsel when desired and provided by the party assert-

[6] "All that it is necessary now to decide, is that in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law; and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." *Powell v Alabama,* 287 US 45, 71; 53 S Ct 55; 77 L Ed 158; 84 ALR 527 (1932).

ing the right. The right to be heard would be, in
many cases, of little avail if it did not comprehend
the right to be heard by counsel. Even the intelli-
gent and educated layman has small and some-
times no skill in the science of law. * * * He
requires the guiding hand of counsel at every step
in the proceedings against him." *Powell v Ala-
bama, supra,* pp 68–69.

The subsequent history is well known. In *Betts v
Brady,* 316 US 455, 462; 62 S Ct 1252; 86 L Ed
1595 (1942), the Court held that a claim raised in
state court asserting denial of counsel "is to be
tested by an appraisal of the totality of facts in a
given case" including the relative seriousness of
the offense, the complexity of the issues and the
defendant's maturity and ability to deal with
them.

The totality of facts approach to the right to
assigned counsel was abandoned for federal prose-
cutions in *Johnson v Zerbst,* 304 US 458; 58 S Ct
1019; 82 L Ed 1461; 146 ALR 357 (1938), and for
state prosecutions in *Gideon v Wainwright,* 372
US 335, 342–344; 83 S Ct 792; 9 L Ed 2d 799; 93
ALR2d 733 (1963). *Johnson* held that the Sixth
Amendment right of an accused to enjoy the as-
sistance of counsel required federal courts to pro-
vide counsel for indigents in criminal prosecutions.
*Gideon* held that the Due Process Clause of the
Fourteenth Amendment made the Sixth Amend-
ment obligatory on the states.

Like *Powell v Alabama, Gideon* emphasized the
need to assure defendant a fair hearing: "[I]n our
adversary system of criminal justice, any person
haled into court, who is too poor to hire a lawyer,
cannot be assured a fair trial unless counsel is
provided for him."

The Court first recognized the indigent's right to

access to the appellate process in *Griffin v Illinois,* 351 US 12, 19–20; 76 S Ct 585; 100 L Ed 891; 55 ALR2d 1055 (1956), where financial barriers which in practical effect precluded appellate review of an indigent criminal defendant's appeal were set aside. To obtain full, direct appellate review it was necessary to furnish a bill of exceptions or report of proceedings sometimes impossible to prepare without a stenographic transcript of the trial. The Court, invoking the Due Process and Equal Protection Clauses, declared: "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." [7]

In *Douglas v California,* 372 US 353, 355, 357; 83 S Ct 814; 9 L Ed 2d 811 (1963), decided the same day as *Gideon v Wainwright,* the Court held that to eliminate "discrimination against the indigent" it is not enough to put aside transcript and filing fees; it is also necessary to provide the assistance of counsel in the *"one and only appeal* an indigent has as of right".[8] Reliance was placed on both the

---

[7] The Court declined to hold that Illinois must purchase a stenographer's transcript for every indigent defendant, stating that Illinois might "find other means of affording adequate and effective appellate review to indigent defendants". *Griffin v Illinois,* 351 US 12, 20; 76 S Ct 585; 100 L Ed 891; 55 ALR2d 1055 (1956).

*See, also, Burns v Ohio,* 360 US 252; 79 S Ct 1164; 3 L Ed 2d 1209 (1959) (filing fee for application in discretionary appeal to state supreme court from intermediate appellate court); *Smith v Bennett,* 365 US 708; 81 S Ct 895; 6 L Ed 2d 39 (1961) (filing fee for state habeas corpus application); *Lane v Brown,* 372 US 477; 83 S Ct 768; 9 L Ed 2d 892 (1963) (public defender's decision whether to provide a transcript is final when it is sought for use in a post-conviction proceeding); *Draper v Washington,* 372 US 487; 83 S Ct 774; 9 L Ed 2d 899 (1963) (free transcript provided only if trial judge satisfied that assignments of error are not frivolous).

[8] The defendant's rights under the Fourteenth Amendment were held to have been violated. The Court spoke both in terms of a denial of "fair procedure" (due process) *[Douglas v California,* 372 US 353,

Due Process and Equal Protection Clauses.

The development of the indigent criminal defendant's right to counsel was halted in *Ross v Moffitt*, 417 US 600, 610–612; 94 S Ct 2437; 41 L Ed 2d 341 (1974), where the Court held that neither the Due Process nor the Equal Protection Clause of the Fourteenth Amendment requires a state to provide counsel at public expense for discretionary appeals from the state's intermediate appellate court to its highest court or to the United States Supreme Court.

The Court was implicitly critical of predicating the right to assigned counsel for the first appeal as of right on the Due Process Clause.[9] Referring to earlier statements that the Due Process Clause does not oblige the state to provide "any appeal at all",[10] the Court said that it is not necessarily unfair[11] to refuse to provide counsel to indigent defendants "at every stage of the way". "[T]here are significant differences between the trial and appellate stages of a criminal proceeding." At trial the defendant is "haled into court" while, "it is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or jury below". "Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty. That question is more profitably

357; 83 S Ct 814; 9 L Ed 2d 811 (1963)] and of "equality" (equal protection) *[Douglas v California, supra,* p 358].

[9] *Ross v Moffitt,* 417 US 600; 94 S Ct 2437; 41 L Ed 2d 341 (1974).

[10] *McKane v Durston,* 153 US 684; 14 S Ct 913; 38 L Ed 867 (1894).

[11] In *Griffin v Illinois, supra,* p 18, it was said that whether or not a state is obliged to provide appellate review, when it does it becomes "an integral part of the * * * trial system for finally adjudicating the guilt or innocence of a defendant".

considered under an equal protection analysis."
*Ross v Moffitt, supra,* pp 610–611.

The Court concluded that to deny counsel in a discretionary application following an appeal as of right—defendant then having a transcript, a brief setting forth his claims and often an appellate court opinion—was not an "unreasoned distinction",[12] did not result in a "meaningless ritual"[13] or deny indigents "an adequate opportunity to present their claims fairly within the adversarial system",[14] and did not deny equal protection.[15]

It appears from the *Ross v Moffitt* exegesis that an indigent criminal defendant's claim that he was denied the benefit of counsel at the trial level will be analyzed under the Due Process Clause. A claim that state-imposed financial barriers, such as the cost of transcripts and filing fees, preclude any appeal at all and a claim that counsel is required to prosecute a meaningful appeal will be analyzed principally under the Equal Protection Clause.

The basis for this distinction might be uneasiness in employing a due process analysis where access to the appellate process is sought in light of earlier statements by the Court that it would not

---

[12] *Rinaldi v Yeager,* 384 US 305, 310; 86 S Ct 1497; 16 L Ed 2d 577 (1966).

[13] *Douglas v California, supra,* 372 US 358.

[14] *Ross v Moffitt, supra,* p 612, citing *Griffin v Illinois, supra,* pp 18–19, where the opinion spoke of "adequate [appellate] review".

[15] "These materials, supplemented by whatever submission respondent may make *pro se,* would appear to provide the Supreme Court of North Carolina with an adequate basis for its decision to grant or deny review." *Ross v Moffitt, supra,* p 615.

The "relative handicap" of an indigent defendant in comparison with a wealthy defendant is "far less than the handicap borne by the indigent defendant denied counsel on his initial appeal as of right in *Douglas".* Under the existing North Carolina system, an indigent defendant is assured "an adequate opportunity to present his claims fairly in the context of the State's appellate process". *Ross v Moffitt, supra,* p 616.

be violative of the Due Process Clause to fail to provide any appeal at all.[16]

---

[16] *McKane v Durston, supra; District of Columbia v Clawans,* 300 US 617, 627; 57 S Ct 660; 81 L Ed 843 (1937) ("[d]ue process does not comprehend the right of appeal"); *Ohio ex rel Bryant v Akron Metropolitan Park Dist,* 281 US 74, 80; 50 S Ct 228; 74 L Ed 710; 66 ALR 1460 (1930) ("the right of appeal is not essential to due process, provided that due process has already been accorded in the tribunal of first instance"); *Luckenbach S S Co v United States,* 272 US 533, 536; 47 S Ct 186; 71 L Ed 394 (1926) ("the well settled rule applies that an appellate review is not essential to due process of law, but is a matter of grace"); *Lott v Pittman,* 243 US 588, 591; 37 S Ct 473; 61 L Ed 915 (1917) ("the right of appeal is not essential to due process").

These earlier statements appear to have rested on both a historical and pragmatic analysis.

"A review by an appellate court of the final judgment in a criminal case, however grave the offence of which the accused is convicted, was not at common law and is not now a necessary element of due process of law." *McKane v Durston, supra,* 687.

"In nearly every State are statutes giving, in criminal cases of a minor nature, a single trial, without any right of review. For nearly a century trials under the Federal practice for even the gravest offences ended in the trial court, except in cases where two judges were present and certified a question of law to this court. In civil cases a common rule is that the amount in controversy limits the entire litigation to one court, yet there was never any serious question that in these cases due process of law was granted." *Reetz v Michigan,* 188 US 505, 508; 23 S Ct 390; 47 L Ed 563 (1903).

One of these considerations, that at common law there was no right of appeal, did not deter the Court in *Powell v Alabama* where the Court acknowledged that in England a person charged with treason or felony was in general denied the aid of counsel.

Appellate review is now an integral part of the administration of justice in this and every other state and in the Federal system. While at one time there were no intermediate appellate courts and review in many cases was discretionary, appellate review is now as much a part of the administration of justice in civil and criminal cases as representation by counsel.

In *Griffin,* once again acknowledging that the "State is not required by the Federal Constitution to provide appellate courts or right to appellate review at all", it was said that once a state "does grant appellate review [it cannot] do so in a way that discriminates against some convicted defendants on account of their poverty". *Griffin v Illinois, supra,* p 18.

Const 1963, art 6, § 1 provides that "[t]he judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court * * * ". While it is provided that the "jurisdiction of the court of appeals shall be provided by law" (Const 1963, art 6, § 10), that must be read in the context in which the court was established. Before the Court of

In our view, there is little difference between the Court's due process and equal protection analyses in right-to-counsel cases. Whether the issue is "fairness" under the Due Process Clause or "disparity in treatment" under the Equal Protection Clause,[17] the analysis from *Powell v Alabama* to *Ross v Moffitt* has been in terms of the need for and importance of counsel in making meaningful the rights to trial and access to the appellate process. At the trial level, the question is whether denial of the "guiding hand of counsel" [18] deprives the indigent defendant of a meaningful hearing resulting in deprivation of due process. At the appellate level, the question is whether denial of the guiding hand of counsel deprives the indigent defendant of an adequate opportunity to present his claims fairly within the adversary system resulting in deprivation of equal protection of the laws.

## II

Reist contends that a parent's right to the care,

Appeals was established, there was either a right of appeal or a right to apply for leave to appeal to the Supreme Court from any adjudication of a trial court. Const 1908, art 7, § 4; MCL 600.232; MSA 27A.232; 7 Callaghan's Michigan Pleading & Practice (1st ed), chs 52, 53, p 388 *et seq.* The Court of Appeals was created to reduce this Court's appellate burden, this Court retaining "appellate jurisdiction as provided by rules of the supreme court". Const 1963, art 6, § 4. The circuit courts have "appellate jurisdiction from all inferior courts and tribunals except as otherwise provided by law". Const 1963, art 6, § 13.

In that context the validity of an effort to eliminate altogether the appellate jurisdiction of the Court of Appeals of any judgment of a trial court is to be doubted. It would appear, rather, that—whether by leave or as of right—all judgments of trial courts must be subject to appeal to the Court of Appeals. Otherwise the appellate burden on this Court, contrary to the structure and spirit of art 6, could become overwhelming.

We make these observations because we hesitate by silence to be seen as "recognizing" a plenary power in the Legislature to deny appellate review.

[17] *Ross v Moffitt, supra,* p 609.

[18] *Powell v Alabama, supra,* p 69.

custody, companionship and management of his or her child is a fundamental aspect of personal liberty entitled to the fullest measure of due process and equal protection and that this encompasses assistance of counsel and the provision of transcripts on appeal. Because a fundamental interest is involved, the Equal Protection Clause obliges the state to establish a compelling reason for refusing to provide counsel and transcripts to indigent parents when parents of means have such assistance and protection.

The Attorney General, representing the Bay County circuit and probate judges, counters that the "touchstone" of a due process right to court-appointed counsel is the "deprivation of personal liberty". Since Reist's personal liberty is not being threatened, she is not entitled to the assistance of counsel or transcripts at public expense.

The first United States Supreme Court decision recognizing a constitutional right to assistance in a civil case is *Boddie v Connecticut,* 401 US 371, 374; 91 S Ct 780; 28 L Ed 2d 113 (1971), where the Court held that the state could not require an indigent person to pay a filing fee or service-of-process costs as a precondition to obtaining legal dissolution of a marriage. The Court declared that marriage involves "interests of basic importance in our society" [19] and that at stake was "the adjustment of a fundamental human relationship". The interest was characterized "a protected right". *Boddie v Connecticut, supra,* pp 376, 383, 379.

---

[19] The Court did not explicitly identify as a "liberty" the legal dissolution of a failed marriage and the resulting freedom to contract another legal marriage.

The Court cited *Loving v Virginia,* 388 US 1, 12; 87 S Ct 1817; 18 L Ed 2d 1010 (1967), where it had declared that "[t]he freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men" and held that Virginia's antimiscegenation statute deprived the Lovings of "liberty" in violation of the Due Process Clause.

The Court concluded that "given the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages".

The Court's emphasis on the "basic" and "fundamental" nature of the marriage relationship in society underscores that indigent persons cannot expect public assistance to prosecute and defend civil suits whenever a liberty or property interest is at stake.[20]

The interest of parent and child in their mutual support and society are of basic importance in our

---

[20] In *United States v Kras,* 409 US 434, 444–445; 93 S Ct 631; 34 L Ed 2d 626 (1973), the Court declined to allow indigents a waiver of the bankruptcy filing fee: "The denial of access to the judicial forum in *Boddie* touched directly, as has been noted, on the marital relationship and on the *associational interests* that surround the establishment and dissolution of that relationship. On many occasions we have recognized the fundamental importance of these interests under our Constitution. [Citations omitted.] The *Boddie* appellants' inability to dissolve their marriages seriously impaired their freedom to pursue other *protected associational activities.* Kras' alleged interest in the elimination of his debt burden, and in obtaining his desired new start in life, although important and so recognized by the enactment of the Bankruptcy Act , *does not rise to the same constitutional level.* [Citations omitted.] If Kras is not discharged in bankruptcy, his position will not be materially altered in any constitutional sense. Gaining or not gaining a discharge will effect no change with respect to basic necessities. We see *no fundamental interest* that is gained or lost depending on the availability of a discharge in bankruptcy."

Here, as in *Boddie,* a protected "associational" interest is at stake.

The Court again emphasized the associational interest involved in *Boddie* in distinguishing that case from the claim of welfare recipients seeking a waiver of filing fees for their appeals of orders reducing their benefits. "This interest, like that of Kras, has far less constitutional significance than the interest of the *Boddie* appellants." That the state court had interpreted applicable law to give special rights in other cases, including "cases terminating parental rights" was not capricious or arbitrary. *Ortwein v Schwab,* 410 US 656, 659, 661; 93 S Ct 1172; 35 L Ed 2d 572 (1973).

society and their relationship occupies a basic
position in this society's hierarchy of values.
Clearly any legal adjustment of their mutual
rights and obligations affects a fundamental hu-
man relationship. The rights at stake are "pro-
tected" and encompassed within the meaning of
the term "liberty" as used in the Due Process
Clause.[21]

In holding that the Due Process Clause safe-
guards parental rights and that counsel must be
provided an indigent parent in termination pro-
ceedings, the Supreme Court of Washington em-
phasized the centrality of the family in our society
and that the "liberty" protected by the Due Proc-
ess Clause includes personal freedoms in addition
to freedom from physical restraint:

"The family entity is the core element upon
which modern civilization is founded. Tradition-
ally, the integrity of the family unit has been
zealously guarded by the courts. *See, e.g., Ginsberg
v New York,* 390 US 629, 639; 88 S Ct 1274; 20 L
Ed 2d 195 (1968); *May v Anderson,* 345 US 528,
533; 73 S Ct 840; 97 L Ed 1221 (1953). The safe-
guarding of familial bonds is an innate concomi-
tant of the protected status accorded the family as
a societal institution. The fundamental nature of
parental rights as a 'liberty' protected by the due
process clause of the Fourteenth Amendment was
given expression in *Meyer v Nebraska,* 262 US
390, 399; 43 S Ct 625; 67 L Ed 1042; 29 ALR 1446
(1923), wherein the Court stated: 'While this Court
has not attempted to define with exactness the
liberty thus guaranteed, the term has received
much consideration and some of the included
things have been definitely stated. Without doubt,
it denotes not merely freedom from bodily re-

---

[21] US Const, Am XIV; Const 1963, art 1, § 2.

straint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.' " *In re Luscier,* 84 Wash 2d 135; 524 P2d 906 (1974).

The Supreme Court of Maine said that "the natural right of a parent to have custody of his children has constitutional dimensions" in holding that the Due Process Clause requires that counsel be provided indigent parents at state expense in proceedings for removal of a child from their custody: "Whatever may be the portion of the Bill of Rights giving rise to the constitutional protection of the right to raise one's children, we are satisfied such protection exists under the Federal Constitution." *Danforth v State Department of Health & Welfare,* 303 A2d 794, 796–797 (Me, 1973).

The New York Court of Appeals similarly declared: "A parent's concern for the liberty of the child, as well as for his care and control, involves too fundamental an interest and right [citations omitted] to be relinquished to the State without the opportunity for a hearing, with assigned counsel if the parent lacks the means to retain a lawyer." *In the Matter of Ella B,* 30 NY2d 352, 356–357; 334 NYS2d 133; 285 NE2d 288 (1972). The holding rested on both the Due Process and Equal Protection Clauses.

The Supreme Courts of Nebraska, Oregon and Pennsylvania have also held that the Due Process Clause requires the appointment of counsel for indigent parents at state expense in proceedings to

terminate parental rights. *In re Friesz,* 190 Neb 347; 208 NW2d 259 (1973);[22] *State v Jamison,* 251 Or 114; 444 P2d 15 (1968);[23] *In re Adoption of R I,* 455 Pa 29; 312 A2d 601 (1973).[24]

[22] " 'A parent's concern for the liberty of the child, as well as for his care and control, involves too fundamental an interest and right [citations omitted] to be relinquished to the State without the opportunity for a hearing, with assigned counsel if the parent lacks the means to retain a lawyer. To deny legal assistance under such circumstances would—as the courts of other jurisdictions have already held [citations omitted]—constitute a violation of his process rights and, in light of the express statutory provision for legal representation for those who can afford it, a denial of equal protection of the laws as well.' " *In re Friesz,* 190 Neb 347, 349–350; 208 NW2d 259, 260–261 (1973).

[23] "It is the general rule that where the state is the adversary party and is attempting to take a child permanently from a parent, the parent is entitled to the assistance of retained counsel. * * * The permanent termination of parental rights is one of the most drastic actions the state can take against its inhabitants. It would be unconscionable for the state forever to terminate the parental rights of the poor without allowing such parents to be assisted by counsel. Counsel in juvenile court must be made available for parents and children alike when the relationship of parent and child is threatened by the state." *State v Jamison,* 251 Or 114, 117; 444 P2d 15, 17 (1968).

[24] "It has long been established that an individual is entitled to counsel at any proceeding which may lead to the deprivation of 'substantial rights.' [Citations omitted.]

"While the above-cited cases are criminal in nature, the logic behind them is equally applicable to a case involving an indigent parent faced with the loss of her child. * * *

"In the instant case, on the other hand, appellees are attempting to terminate appellant's parental rights against her opposition. Consequently the appellant's adversaries have the burden of proving that they are entitled by law to terminate those rights. In such a proceeding, it would be grossly unfair to force appellant to defend against the appellees' case without the assistance of someone, trained in the law, who could test the appellees' case by the rules of evidence and the techniques of cross-examination." *In re Adoption of R I,* 455 Pa 29, 31–33; 312 A2d 601, 602–603 (1973).

Statutes in a number of states, like the Michigan Juvenile Court Rule, provide for appointment of counsel to represent indigent parents in neglect and termination proceedings. See, *e.g.,* Colo Rev Stat 1963 § 22-1-6 (1967 Perm Cum Supp); Conn Gen Stat §§ 17-66b, 17-66c (1975); Ga Code Ann § 24-2418.1 (1971); Idaho Code § 16-1631 (Supp 1975); Iowa Code Ann § 232.28 (1969); Kan Stat Ann § 38-820 (1973); Minn Stat Ann § 260.155 (1971); NJSA 9:6-8.43(a) (Supp 1975); ND Cent Code § 27-20-26 (Supp 1973); Ohio Rev Code § 2151.352 (1974); Okla Stat 1971, tit 10, § 1109(b); Or Rev Stat § 419.498(2) (1973); SD

The state is the moving force in neglect and termination proceedings. That this is a confrontation between the state and an individual is "a circumstance of great importance in determining a standard of fairness". *Danforth v State Department of Health and Welfare, supra.*

Parents most often involved in neglect and termination proceedings are usually the least equipped, in terms of intellectual and emotional resources, to respond in such proceedings.[25] "The indigent are frequently the least able to cope with government in its official functions. See Paulsen, *Juvenile Courts, Family Courts, and the Poor Man,* 54 Cal L Rev 694 (1966). The case at bar was routine for the welfare workers and other juvenile court staff. For the indigent mother, however, the entire proceedings were incomprehensible." *State v Jamison,* 251 Or 114, 116–117; 444 P2d 15, 17 (1968).

Studies indicate that termination of parental rights occurs less frequently when parents are represented by counsel.[26] "In a neglect proceeding the full panoply of the traditional weapons of the state are marshalled against the defendant parents. * * * The crucial issues in a neglect proceeding may be difficult to grasp and consequently difficult to refute for an uneducated and unsophisticated layman." *Danforth v State Department of Health & Welfare, supra,* p 799.

The best interests of the child will often be served by preservation of the parent-child bond; the child as well as the parent has an interest in preservation of their relationship. Counsel for the

Comp Laws Ann § 26-8-22.2 (1975 Supp) and Utah Code Ann § 55-10-96 (1973 Rev).

[25] See *Crist v Division of Youth and Family Services,* 128 NJ Super 402, 415; 320 A2d 203, 210 (1974).

[26] *See* Note, *Child Neglect: Due Process for the Parent,* 70 Colum L Rev 465, 476 (1970).

parent is the one advocate who can be depended on to defend that relationship.

We conclude that the court rule adopted by this Court (see fn 2) requiring the appointment of counsel to represent indigent parents at hearings which may involve termination of their rights is constitutionally based. Because of the nature of parental rights termination proceedings and of the basic, fundamental nature of the parental relationship in our society, the Due Process Clause requires assignment of counsel at public expense for an indigent for hearings when the state seeks to terminate his parental rights.

### III

We turn to the presented issues whether an indigent parent is entitled at public expense to transcripts of neglect and termination proceedings and to assigned counsel on the first appeal as of right to the circuit court from a probate court decision terminating parental rights.

In holding that an indigent parent has a due process right to transcripts and assigned counsel on appeal, the Supreme Court of Washington declared: "The absence of counsel in the perhaps sophisticated realm of appellate practice will only compound the probabilities that the rights of the parents are not effectually presented and protected by the law and the courts." *In re Luscier, supra,* 138.

There were 777 orders permanently terminating parental rights entered by probate courts in Michigan in 1974, including 356 in Wayne, 22 in Oakland, 25 in Macomb, 25 in Genesee, 35 in Kent, 19 in Muskegon and 58 in Saginaw Counties. There were 15 appeals to the circuit court in the entire

state, including 1 each in Macomb and Saginaw Counties; no appeals were taken in Wayne, Genesee, Kent, Muskegon or Oakland Counties. This suggests either a surprising agreement with what one would surmise is in most cases a traumatic, wrenching adjustment or that poverty precludes exercise of the statutory right to appeal. If the former, then there will be few who will desire assigned counsel and transcripts and the burden of providing such assistance to those who desire it will be relatively small. On the other hand, if the cost of preparing transcripts and hiring counsel explains the low rate of appeal, then poor people are being prevented from seeking review of termination orders because of their poverty.

Probate court appeals to the circuit court are no longer tried de novo. They are decided on the "written transcript of the record made in the probate court or on a record settled and agreed to by the parties and approved by the court".[27] Where counsel for the parties can agree on a settled record with the approval of the court, the appeal can be heard without the expense of transcribing the stenographic record. Where, however, that does not occur, no appeal is possible unless the record is transcribed.

The state has the burden of proof in parental rights termination proceedings. An assessment on appeal of the adequacy of the proofs to support a finding of neglect warranting termination will generally require an examination of a transcript of the probate proceedings.

The transcript requirement is a financial burden well beyond the capacity of an indigent person. Where transcripts are necessary to perfect an

[27] MCLA 701.45a; MSA 27.3178(45.1). See also MCLA 712A.22; MSA 27.3178(598.22). (See fn 3 for text of these provisions.)

appeal, unless the state provides them without charge the indigent parent is denied all access to the appellate process. In holding that the intermediate appellate court erred in ordering an indigent parent to pay filing fees and the cost of transcripts of the indigency hearings, the Arizona Supreme Court said:

"Because the right to raise one's children is fundamental, any proceeding by the State to deprive a person of that right must take place under the aegis of the equal protection and due process clauses of the Fourteenth Amendment. Therefore, the Court of Appeals cannot deny the petitioner her statutory right of appeal solely because of her indigency." *In the Matter of Appeal in Pima County Juvenile Action No J-46735,* — Ariz —; 540 P2d 642, 643 (1975).

The issues on appeal from an order terminating parental rights are generally both factual and legal. Prosecution of an appeal requires a knowledge and understanding of the court rules, statutes and judicial decisions. The procedures for prosecuting an appeal are intricate and, to one not experienced in appellate work, complex.

Persons of means can fully exercise the statutory and constitutional avenues of appeal. The failure to provide poor persons an effective and meaningful appeal of a decision terminating their parental rights through the assignment of appellate counsel is a particularly invidious deprivation and distasteful reminder of their poverty. "[I]t is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." *Rinaldi v Yeager,* 384 US 305, 310; 86 S Ct 1497; 16 L Ed 2d 577 (1966).[28] In failing to

---

[28] The Court held unconstitutional a statute requiring that the

provide the means by which this class of persons can obtain meaningful and adequate appellate review "an unconstitutional line has been drawn between rich and poor".[29]

Having concluded that the right to assigned counsel in parental rights termination proceedings is process due the indigent parent, we also conclude that indigent parents are entitled to meaningful and adequate access to the appellate process and that this right can only be achieved through the representation by counsel and providing counsel with necessary transcripts.[30] The Equal Protection Clause requires that indigent parents be provided counsel for prosecuting the first appeal as of right to the circuit court and such transcripts as counsel requires.

## IV

We agree with the courts of other states that an indigent parent is entitled to be advised of his or her rights. "Once the conclusion is reached that someone in appellant's position has the right to assigned counsel to represent her at the hearing on the appellees' petition, it necessarily follows that she is entitled to be advised of that right. As the New York Court of Appeals explained in the *Matter of [Ella] B* [30 NY2d 352, 357–358; 334 NYS2d 133, 137; 285 NE2d 288, 290]: 'If the rule were otherwise, if the party before the court was

county treasurer be reimbursed from "institutional earnings" of a prisoner for the expenses of furnishing transcripts of the record. This was held to be an invidious discrimination between prisoners, on the one hand, and those fined, given suspended sentences, or placed on probation, on the other.

[29] *Douglas v California, supra,* p 357.

[30] The United States Supreme Court decisions providing criminal defendants access to the appellate process on due process and equal protection grounds followed earlier decisions recognizing a constitutional right to the appointment of counsel at the trial level.

not apprised of his right to assigned counsel, there could be no assurance either that he knew he had such a right or that he had waived it.' " *In re Adoption of R I,* 455 Pa 29, 33; 312 A2d 601, 603 (1973).

To suggest that an indigent parent should have asked for counsel if the assistance of counsel is desired "is to disregard the realities of the culture of poverty. In a matter as grave as the permanent loss of parental rights, we hold that the waiver of counsel must be shown to have been a knowing waiver." *State v Jamison,* 251 Or 114, 118; 444 P2d 15, 17 (1968).

Accordingly, henceforth, upon entry of an order terminating parental rights the court shall of record advise parents whose rights are terminated that they have a right to appeal the order of termination to the circuit court and that if they are indigent the court will appoint counsel at public expense to represent them and will supply transcripts of the proceedings.

A request for counsel may be made informally and shall be deemed timely if made orally or in writing not later than 20 days after the entry of the order of termination.

A timely request for counsel shall toll the time for taking an appeal until entry of an order appointing or denying counsel and for two weeks thereafter. An order appointing counsel shall, whether or not the indigent parent makes a separate request for transcripts, direct that the court stenographer supply counsel with such transcripts of the probate court neglect and termination proceedings as counsel may require. If the court enters an order denying counsel, it shall notify the parent of his or her right to appeal that decision.

V

The parties, the Attorney General, and *amici* have addressed the question posed in our order granting leave to appeal: "If such indigent parent is entitled to an attorney and transcript at public expense in such cases, which governmental unit shall bear the cost?"

The question whether the state or the county shall bear the expense of providing constitutionally-required services to indigent persons is primarily for the Legislature to resolve.

Unless and until the Legislature specifically implements the constitutional right of the indigent parent in parental rights termination proceedings to representation at the trial level and to access to the appellate process, the financial burden of providing such assistance is allocated to the county as the unit of government which funds the tribunal in which the indigent parent is called upon to defend his right to the continued custody of his child. Payment of the cost of providing such assistance is necessary to and a part of the cost of exercise of the probate court's power in neglect and termination proceedings. The Legislature has decreed that "[a]ll expenses incurred in carrying out the provisions of this chapter,[31] except as may otherwise be specifically provided by law, shall be paid upon the order of the judge of probate by the county treasurer from the general fund of the county". MCLA 712A.25; MSA 27.3178(598.25).

This case is remanded to the probate court for the entry of an order appointing counsel for Reist and directing that appointed counsel be furnished

---

[31] "[T]his chapter" is Chapter XIIA (Juveniles and Juvenile Division) of the Probate Code of 1939. Chapter 12A contains the provisions (see fns 1 and 3) conferring jurisdiction of neglected children on the probate court, providing for termination of parental rights and for appeals as of right to the circuit court.

transcripts of the neglect and termination proceedings. Appointed counsel may appeal as of right to the circuit court within two weeks of appointment. No costs, a public question.

Kavanagh, C. J., and Williams, J., concurred with Levin, J.

Ryan, J., took no part in the decision of this case.

Coleman, J. I agree that indigents whose parental rights have been terminated should be provided an attorney and a transcript at county expense if they appeal to the circuit court. The basis for this conclusion is the statute and court rule. A constitutional analysis is not required.[1]

There is an accelerated trend to couch in constitutional language almost any issue argued before the courts. Each time one frontier is erased or made indistinct, a stampede understandably follows to push on even further. Although the living law must reflect change, it is respectfully submitted that it should look ahead to determine in what direction wisdom would lead us. It is counterproductive to "rush off in all directions".

My colleagues' opinion is based upon an emotion understandable and shared by all of us who are parents, but it is not properly based upon the proferred precedent. As a result the opinion would open the floodgates to the county treasury unnecessarily wide.

---

[1] *Taylor v Auditor General*, 360 Mich 146, 154; 103 NW2d 769 (1960), said "few principles of judicial interpretation are more firmly grounded than this: a court does not grapple with a constitutional issue except as a last resort". I believe the principle is as firmly grounded in common sense as it is in legal precedent.

I

JCR 1969, 6.3(a)(2)(b) provides that "counsel shall be appointed * * * to represent the parents * * * at hearings" which may involve termination of parental rights if the parents "are financially unable to employ counsel" and "legal aid or public defender counsel is not available".[2]

The juvenile code [MCLA 712A.22; MSA 27.3178(598.22)] provides that an appeal "may be taken to the circuit court by * * * any person aggrieved by any order of the juvenile division of the probate court" as provided in MCLA 701.45a; MSA 27.3178(45.1). That section states that any person aggrieved by any probate court order, sentence or judgment "may appeal therefrom to the circuit court". The circuit court may not refuse to hear the appeal if timely filed.

The juvenile court rule provides counsel for indigent parents during "hearings which may involve termination of their rights" to their child. The question to be faced is when do the "hearings" end—when the probate court has entered an order or when an appeal has been resolved by the circuit court?

As a member of the committee which drafted the juvenile court rules, the writer acknowledges that the hearing considered in rule 6.3(a)(2)(b) was the one involving the juvenile court. The question whether counsel should be provided for the appeal was not decided.

It is also acknowledged that when the probate

---

[2] JCR 1969, 6.3(a)(2)(b) provides:

"Unless waived as provided by Rule 6.2, counsel shall be appointed on the court's own motion to represent the parents, guardian, or custodian of the child charged with offense against the child at hearings which may involve termination of their rights when legal aid or public defender counsel is not available, and they are financially unable to employ counsel to represent themselves."

court terminates parental rights, that decision is
effective unless it is appealed and revoked or
stayed by the circuit court. MCLA 712A.22 says,
"The pendency of an appeal shall not suspend" a
termination order "unless the circuit court shall
specifically so order".

With these two acknowledgements, we must
return to the statute which grants an aggrieved
party the right to have the juvenile court decision
reviewed by the circuit court. Even though the
juvenile court has entered its final, effective order,
an aggrieved party may have it reviewed by a
separate court which may be persuaded to reverse
the juvenile court.

The juvenile court rules have recognized the
very important and sensitive nature of termina-
tion proceedings by providing for the automatic
appointment of counsel for indigents who do not
have access to legal aid help. These are proceed-
ings involving traditions, emotions and responsibil-
ities which give them a unique cast.

Earlier, we said the living law must reflect
change. When constitutions, statutes and rules are
drafted, they cannot hope to provide individually
for all developments. They must be drafted to
apply to the unforseen as well as the predicted.

It is unknown how the committee or the Su-
preme Court would have voted if the question in
this case had been presented to them. The mem-
bers did regard termination proceedings as being
very important and unique. They provided for the
automatic appointment of counsel for indigent
parents who did not have access to legal assist-
ance. The statutes further provided a right to
appeal the juvenile court ruling.

Counsel is provided to protect the parent's inter-
ests at the termination hearing. We believe the

definition of "hearings" should include the proceedings on appeal to the circuit court and would interpret JCR 1969, 6.3(a)(2)(b), in that manner. The rule is judge-made and its scope can properly be provided judicially.

If the right to appeal is exercised, MCLA 701.45a says it "shall be on a written transcript of the record" if the parties cannot agree on a settled record approved by the court. The statute requires either the transcript or a settled record. If the parent-appellant cannot afford a transcript, one must be provided so that statute can be satisfied.

It is agreed that there is no statutory authority by which attorney fees for indigent parents may be paid by the State Department of Social Services or other state agency and that the unit of government which funds the tribunal is required to pay the fees of attorneys appointed to represent indigents. In this case, payment must be made by order of the probate court.

The Legislature has not provided for state assumption of such costs.

II

We do not believe a constitutional analysis is necessary to resolve this case. We respond to the constitutional analysis because it incorrectly uses a criminal law focus to analyze proceedings designed to protect the child.

The individual convicted in a criminal case faces the loss of personal liberty. He has been convicted of a crime and stands to be punished. Because the loss of liberty is so serious, appellate courts must insure that the conviction was not achieved by improper means, that the punishment was properly imposed.

In termination proceedings, the focus is on protecting the child. The question is whether the juvenile court must intercede on behalf of the child. Upon a disposition which terminates parental rights, the court necessarily finds that it is contrary to the best interest of the child to remain with that parent. It has been determined as a matter of fact and of law that the interests of the parent and of the child are inconsistent.

Separation from a parent is a large factor to be weighed in the disposition of a termination case. Once a judgment is made that permanent separation is required, the interests of the child and parent cannot be presumed to coincide as has been suggested.

We are urged to find that in such an appeal, appointment of counsel for the *parent* protects the rights of the *child.* After a judicial determination that the child is dependent, neglected or both, and that a parent cannot or will not in the foreseeable future provide the care necessary to an opportunity for normal physical and emotional growth of a child, the interests of parent and child are presumed to be antithetical.

Parents with different backgrounds, capabilities and personalities face termination hearings and subsequently face appeal proceedings. Some do love their children unselfishly,[3] but because of their own problems have not, will not or cannot provide a future which is not destructive to the child. Some children are unwanted and cruelly rejected by parents who nonetheless retain a strong proprietary interest as in any other posses-

---

[3] Some have loved their children so unselfishly that they have asked for termination of their rights or have been content to have the court do what they could not themselves do, in order to provide hope for the child.

sion. Some parents, often themselves abused while young, will inflict terrible abuse upon their children even if hating themselves later. Some need a child for public assistance purposes and have little other real interest. Some are guilt-ridden and have a need to project the guilt upon the court and a need to save "face". In other words, all parents whose rights have been terminated are not the same in any way excepting that they have been judicially found incapable of or unwilling to provide the care necessary to a certain child.

The direction of this appeal is towards parental "rights" without noticing that the corresponding responsibilities have been found wanting. The child once more is relegated to the category of a "chattel" or possession without due regard to the child's status as an individual citizen with rights separate and distinct from an adjudicated neglectful or abusive parent and without appropriate focus upon the one to be protected by these proceedings.

The prevailing opinion continues in part II to dicta concerning an unauthorized issue, and thereby does considerable mischief.[4]

Michigan long has provided for appointment of counsel for indigents in every termination hearing and plaintiff in this case had counsel.[5] Such an appointment is not in issue.

[4] We took this case as to Carol Reist only and limited the issues to:

1. Is an indigent parent entitled to an attorney at public expense for an appeal of a probate court neglect proceeding at which parental rights are terminated?

2. Is an indigent parent entitled to a transcript at public expense to pursue an appeal of a probate court neglect proceeding at which parental rights are terminated?

3. If such an indigent parent is entitled to an attorney and transcript at public expense in such cases, which governmental unit shall bear the costs?

[5] The argument tilts at a windmill, saying: "Studies indicate that termination of parental rights occurs less frequently when parents are represented by counsel." *All* termination proceedings in Michigan provide counsel for indigent parents.

Yet, by use of irrelevant citations and quotations in support of the non-issue, the dicta in II presents a broad and indistinct vista of "liberties" to be protected and financial equalizing to be supplied.

Also, in part II, the rationale of *Boddie v Connecticut,* 401 US 371; 91 S Ct 780; 28 L Ed 2d 113 (1971), is expanded. That Court found that a filing fee and service of process in divorce cases completely barred access to the courts by indigents in a matter concerning "the adjustment of a fundamental human relationship". The Court did not speak of providing counsel, but only of entry to the system—an entry already provided in this case.

However, this designation of the state's interest is parlayed into a statement of constitutional right to appointed counsel which can reasonably be interpreted to encompass right to counsel at county expense in all divorce and custody matters.

Another argument proffered by *amicus curiae* Legal Aid Office (Detroit) is relevant to these concerns of expanding constitutional theories regarding *civil* cases. It contends that

"[d]ue process does not require the specific remedy of appeal, but once the state has undertaken to provide appeal as of right, due process and equal protection demand that the right to counsel and transcript be equally available to all petitioners."

Implementation of this claim would mean that not only all Michigan probate court orders but all district court civil matters of final judgment would be subject to court-appointed counsel and free transcripts. If this is to be done, the Legislature should provide the means.

Undoubtedly, access to the judicial system and protecting one's self when brought into it is a complex matter worthy of detailed consideration.

So far, the United States Supreme Court has not said that due process requires a right of appeal in any civil case, much less the right to appointed counsel and free transcript. In fact, in *Ortwein v Schwab,* 410 US 656, 660; 93 S Ct 1172; 35 L Ed 2d 572 (1973), the Court said:

"This Court has long recognized that, even in criminal cases, due process does not require a State to provide an appellate system. *McKane v Durston,* 153 US 684, 687 [14 S Ct 913; 38 L Ed 867] (1894); see *Griffin v Illinois,* 351 US 12, 18 [76 S Ct 585; 100 L Ed 891] (1956); *District of Columbia v Clawans,* 300 US 617, 627 [57 S Ct 660, 663; 81 L Ed 843] (1937); *Lindsey v Normet,* 405 US 56, 77 [92 S Ct 862; 31 L Ed 2d 36] (1972). Under the facts of this case, appellants were not denied due process."

If or when the United States Supreme Court does constitutionally provide for counsel, it is to be hoped that it will anticipate interlocking constitutional arguments relating to our vast panoply of liberties and afford guidelines or limitations in accord with the "practical" as well as the "ideal" in civil cases.

In the interim, the issue of free counsel and transcript to an indigent upon appeal from an order terminating parental rights may be resolved by court rule and statute. The broadly sweeping constitutional decision is unnecessary to the resolution of the issues set forth in the grant of appeal.

We would provide that this decision be effective as to Carol Reist and prospectively to such indigent parents as may make timely request of the probate court for counsel and transcript either upon the record or in writing.

We would remand and order the probate judge

to appoint counsel if Carol Reist remains indigent and provide the necessary transcript.

FITZGERALD, J., concurred with COLEMAN, J.

LINDEMER, J. I must conclude that Reist has no constitutionally protected right to appellate counsel in this matter.

At the beginning we should note that this is not a criminal matter. The makeweight allusions to criminal precedent must perforce be dicta, dicta fraught with danger, dicta that may well return to haunt.

The dicta in *Meyer v Nebraska,* 262 US 390, 399; 43 S Ct 625; 67 L Ed 1042; 29 ALR 1446 (1923), has done just that. The quotation from Meyer was pure dicta, totally unnecessary to the resolution of the issues there found. Cases from the states of Maine and New York were cited which did not involve the right to counsel on appeal.

Then the majority seizes the weakest reed of all, *In re Luscier,* 84 Wash 2d 135; 524 P2d 906 (1974). A reading of *Luscier* clearly indicates that the issue certified to that court for resolution said nothing about counsel on appeal. Moreover, the Washington Court in its concluding, substantive paragraph said:

"We therefore join the Supreme Courts of Maine, Nebraska, New York, Oregon, and Pennsylvania in holding that appointment of counsel is constitutionally required in permanent deprivation proceedings."

That court then cited cases from those jurisdictions not one of which related to the right to counsel on appeal, the issue before us here.

It is clear the majority seeks to do its will here

as a matter of policy, clouding that policy in a cloak of constitutional legitimacy. The policy flows from the majority's total emphasis upon the "right" of Reist to have the care, custody, companionship and management of her child as a fundamental aspect of personal liberty. The emphasis perhaps might rather be placed upon the right of a child, otherwise helpless, to secure freedom from parental abuse.

"the Equal Protection Clause does not require absolute equality or precisely equal advantages". *San Antonio Independent School District v Rodriquez*, 411 US 1, 24; 93 S Ct 1278; 36 L Ed 2d 16 (1973).

Nor does it require the state to:

"equalize economic conditions". *Griffin v Illinois*, 351 US 12, 23; 76 S Ct 585; 100 L Ed 891 (1956) (Justice Frankfurter concurring).

Reist had counsel at the time when the rights which Reist possesses, whatever they may be, were equal to the rights which the child possesses, whatever they may be. Reist now is not in that posture. Reist has been adjudged unfit. That judgment was rendered after appointed counsel had given Reist the value of his legal efforts.

This majority decision will, in my judgment, open doors in ways presently unexpected. What shall we say later of the right of an indigent husband in a divorce proceeding who has lost the custody of his children, a situation in which the state, acting through the prosecuting attorney and the friend of the court, is clearly on the side of the children. Imagination to construct a chamber of horrors, however, is not needed here. The question must remain what constitutional right do we find based upon what precedential logic. I find none.