IN THE MATTER OF REBECCA OAKES

OAKES v KENT COUNTY DEPARTMENT OF SOCIAL SERVICES

1. INFANTS—JUVENILE COURT PROCEEDINGS—INTERESTED PARTY—AD-
   JUDICATIVE PHASE—DISPOSITIONAL PHASE—RIGHT TO JURY—
   COURT RULES.

   An interested party's right to a jury accrues only in the adjudica-
   tive phase of juvenile court proceedings regarding an allegedly
   delinquent or neglected child and not in the dispositional phase
   (JCR 1969, 8.1).

2. INFANTS—JUVENILE COURT PROCEEDINGS—ADJUDICATIVE PHASE—
   COURT RULES.

   It is at the adjudicative stage of a juvenile court proceeding that
   a probate court must determine whether it will take jurisdic-
   tion of an allegedly delinquent or neglected child as mandated
   by statute (JCR 1969, 8.1).

3. INFANTS—JUVENILE COURT PROCEEDINGS—ADJUDICATIVE PHASE—
   DISPOSITIONAL PHASE—RIGHT TO JURY—COURT RULES.

   Once the finder of fact has determined that juvenile court juris-
   diction over an allegedly delinquent or neglected child obtains,
   the right to a jury is not available at any stage of the disposi-
   tional phase of the proceeding (JCR 1969, 8.1).

Appeal from Kent, Stuart Hoffius, J. Submitted
Division 3 March 5, 1974, at Grand Rapids.
(Docket No. 18060.) Decided May 31, 1974.

The parental rights of Kyle and Ola Mae Oakes
were terminated by court order as to Rebecca
Oakes and she was made a permanent ward of the
probate court. Kyle Oakes appealed to circuit
court. Dismissed. Kyle Oakes appeals by leave
granted. Affirmed.

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent
    Children §§ 34, 47.

*James K. Miller,* Prosecuting Attorney, *Donald A. Johnston, III,* Chief Appellate Attorney, and *David A. Dodge,* Assistant Appellate Attorney, for petitioner.

*Joel· S. Whetstone* and *Robert N. Swartz,* Kent County Legal Aid and Defender Association, for appellant.

Before: T. M. Burns, P. J., and V. J. Brennan and Bashara, JJ.

Bashara, J. On April 27, 1973, the appeal of plaintiff Kyle Oakes to the Kent County Circuit Court was dismissed and the judgment of the Kent County Juvenile Court to deny plaintiff's demand for a jury trial in the permanent ward hearings of Rebecca Oakes was affirmed. The minor child of Kyle and Ola Mae Oakes, Rebecca, was made a permanent ward of the Kent County Probate Court, Juvenile Division, on February 29, 1972, in accordance with MCLA 712A.19; MSA 27.3178 (598.19).

This cause arises out of a neglect petition filed by the Kent County Department of Social Services and the hearing held pursuant thereto on September 12, 1968. At this hearing the court determined that Rebecca Oakes was being neglected while in the sole custody of her father, Kyle Oakes. The record discloses that plaintiff did not request that the issue of the juvenile court's right to take jurisdiction of the minor child be heard by a jury. Although the record is not clear as to which facts the court considered in making its decision, certain events are undisputed and would give the court authority to take jurisdiction. The circumstances include, among other considerations, the disappearance of Mrs. Oakes, her whereabouts still

being unknown, the conviction of plaintiff in June, 1968 of having taken indecent liberties with his minor daughter,[1] and the statement of the child regarding the father's conduct.

Accordingly, it was decided to make Rebecca a temporary ward of the probate court. We note, parenthetically, that it is not alleged the court was without justification to make her a permanent ward, only the fact that it chose not to. Six hearings were subsequently held between September 1969 and July, 1971 to review the temporary wardship of Rebecca as provided in MCLA 712A.19; MSA 27.3178(598.19). The lack of improvement in the plaintiff's ability to provide care for Rebecca and her progress in a foster home compelled the court to continue her temporary ward status until February 29, 1972, when a hearing was to be held which is the subject of this action.

A petition had been filed by the Kent County Department of Social Services to make Rebecca a permanent ward of the probate court. Plaintiff made a demand for a jury trial to determine whether the court had jurisdiction to end his parental rights and make the child a permanent ward of the court. The demand was denied and, after hearing the evidence, the probate court terminated the parental rights of Kyle and Ola Mae Oakes. Rebecca was thereafter made a permanent ward of the court and plaintiff appeals the circuit court's decision denying his demand for a jury trial and affirming the decision of the juvenile court.

Initially, it is noted that the parties are in

---

[1] Plaintiff's conviction was subsequently reversed based on the erroneous admission of evidence prejudicing plaintiff's right to a fair trial. *People v Oaks,* 24 Mich App 7; 179 NW2d 688 (1970).

agreement that the right to a jury accrues only in the adjudicative phase of juvenile court proceedings, and not in the dispositional phase.[2] *In re Mathers;* 371 Mich 516, 531; 124 NW2d 878, 885 (1963). We hold that the disposition or the latter phase · of the hearing on the child is the sole province of the juvenile judge.

As plaintiff does not challenge the sufficiency of the findings used to justify termination of his rights or raise any procedural irregularities, it only need be decided whether the proceeding on February 29, 1972 was an adjudicative or dispositional hearing.

We conclude that the February 29, 1972 hearing was part of the dispositional phase, thereby not entitling plaintiff to a jury. There was only one adjudicative hearing in this matter and that was in September of 1968. The court was at that time required to find whether the child was within the provisions enabling it to take jurisdiction. MCLA 712A.18, 712A.2; MSA 27.3178(598.18), 27.3178(598.2). Once jurisdiction was established, as it was here, the court could order such disposition as is required for the best interests of the child. The changing circumstances of the parents or the child will undoubtedly compel a review of the initial disposition, but the right to a jury at each of these subsequent hearings does not obtain. When permanent wardship is at issue there must

[2] JCR 1969, 8.1(a) and (b) define the terms Adjudicative and Dispositional Phase as follows:

"(a) Adjudicative Phase. The adjudicative phase determines whether the child comes within the jurisdiction of the court under provisions of Act 54 of the extra session of 1944, as amended, as alleged in the petition or supplemental petition.

"(b) Dispositional Phase. The dispositional phase determines measures to be taken by the court with respect to the child and adults properly within its jurisdiction in the event the court has determined at the adjudicative phase that the child comes within the provisions of said act."

of course be a requisite showing of facts to support such a disposition. *Fritts v Krugh,* 354 Mich 97; 92 NW2d 604 (1958); *In re Mathers, supra;* and *In the Matter of LaFlure,* 48 Mich App 377; 210 NW2d 482 (1973), but this question is not raised in the instant suit. There was no error in denying plaintiff's demand for a jury as this was a dispositional, not an adjudicative hearing.

Plaintiff next argues that if the February 29, 1972 hearing was not adjudicative, it was held pursuant to MCLA 712A.21; MSA 27.3178(598.21) which provides in part as follows:

"Sec. 21. Any interested person, at any time while the child is under the jurisdiction of the court, may file a petition, in writing and under oath, for a rehearing upon all matters coming within the provisions of this chapter, and upon the rehearing the court may affirm, modify or set aside any order so reviewed. * * * The rehearing shall be conducted in accordance with the provisions of this chapter relative to the conduct of original hearings. At any time the court may enter an order for supplemental disposition as long as the child remains under the jurisdiction of the court."

Although the hearing was convened upon the petition of the Kent County Department of Social Services, plaintiff maintains he was an "interested party" as provided in the statute. That being true, he says, this section requires the hearings be conducted as if they were original hearings, resulting in his right to a jury. The argument fails for two reasons. First, the petition which is the center of the dispute is not part of the record submitted to this Court and without contradictory evidence, we cannot disturb trial court's decision to treat the hearing as dispositional in nature and brought pursuant to MCLA 712A.19; MSA 27.3178(598.19).

Second, had the proceedings been properly

brought under MCLA 712A.21; MSA 27.3178(598.21), we do not interpret the directive, "the rehearing shall be conducted in accordance with * * * original proceedings" to mean an interested party has a right to a jury in each rehearing. The nature of the proceeding at that point remains dispositional, not adjudicative. To allow rehearing by a jury at anytime an interested party desires it would provide the prosecutor or aggrieved parent the right to a weekly trial by jury until satisfied with the result. It appears that this language of the section was intended to provide the same quality of notice to those interested persons that a rehearing was to be held as they would have received in original hearings under MCLA 712A.12 and 712A.13; MSA 27.3178(598.12) and 27.3178(598.13).

In summary, an interested party is entitled to a jury trial in the juvenile court only at the "adjudicative" stage of the proceedings. That is the time when the court must determine whether it will take jurisdiction of an allegedly delinquent or neglected child as mandated by statute. Once the finder of fact, be it juvenile judge or jury, has determined that jurisdiction obtains the right to a jury is not available at *any* stage of the "dispositional" phase of the proceeding.

The statute and court rules provide that the juvenile judge, armed with his experience and supportive social, medical, and psychiatric service, is in the best position to determine the placement, be it temporary or permanent, of the child over whom jurisdiction has been acquired. The safeguard to interested parties is through appellate review of the juvenile judge's determination.

Affirmed.

All concurred.