IN THE MATTER OF PERRY

Docket Nos. 78528, 78531. Submitted April 15, 1985, at Lansing.—
Decided February 3, 1986. Leave to appeal applied for.

DeShawn Perry was born June 13, 1982. Respondent Jodie Perry was 14 years old when she gave birth to DeShawn. Respondent Perry resided with her mother at the time. Respondent James Taylor, the putative father, was 15 years old at DeShawn's birth and has not acknowledged paternity of the child. Due to medical problems, DeShawn remained hospitalized for almost five months after his birth. On September 1, 1982, a hospital social worker referred DeShawn's case to petitioner, Department of Social Services. On October 19, 1982, petitioner filed a petition in the Washtenaw Probate Court, Juvenile Division, seeking temporary custody of DeShawn. The petition alleged that DeShawn came within the provisions of the Probate Code because respondent Perry's mother refused to permit respondent Perry and DeShawn to reside with her, DeShawn required special medical care, and neither respondent had an adequate residence or plan for the care and support of DeShawn. On October 27, 1982, an adjudicative hearing was held before a probate court referee. After advising respondents of their right to counsel and receiving no request for counsel from the respondents, the referee concluded that the probate court had jurisdiction and placed DeShawn temporarily in its custody. The referee ordered that DeShawn be placed in foster care upon his discharge from the hospital. From October 27, 1982, until December 15, 1983, petitioner's foster care workers and administrators of a child care training-counseling-paid employment program attempted without success to assist respondent Perry in preparing herself to regain custody of DeShawn. On

REFERENCES

Am Jur 2d, Courts §§ 29, 32, 80, 81, 104, 183, 201.
Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 13-15, 29-33, 38, 39, 49.
Am Jur 2d, Parent and Child §§ 8-25, 42.
Validity and efficacy of minor's waiver of right to counsel-modern cases. 25 ALR4th 1072.
Right of indigent parent to appointed counsel in proceeding for involuntary termination of parental rights. 80 ALR3d 1141.

December 15, 1983, a petition seeking permanent custody and termination of respondents' parental rights was filed by the petitioner. The petition alleged abandonment and neglect by the respondents. The bringing of the petition was authorized at a hearing held in January, 1984. Respondents were present and the probate court, Loren W. Campbell, J., appointed counsel for the respondents. At a preliminary hearing held February 7, 1984, respondents' counsel contested the allegations of the petition. Respondent Perry's counsel made a motion to dismiss on the grounds that: (1) respondents were entitled to counsel prior to the filing of the petition seeking permanent custody and the termination of respondents' parental rights, (2) respondents did not knowingly and voluntarily waive their right to counsel at the adjudicative hearing held on October 27, 1982, and (3) the failure to appoint counsel tainted the review hearings and the termination proceedings. The probate court denied the motion. A final dispositional hearing was held April 25, 1984. An order was thereafter entered terminating respondents' parental rights to DeShawn. Respondents brought separate appeals claiming the existence of a due process right to court-appointed counsel at an adjudicative or a statutory review hearing. The appeals were consolidated by the Court of Appeals. *Held:*

1. The language contained in the 1969 Juvenile Court Rule regarding appointment of counsel, 6.3(A)(2)(b), "hearings which may involve termination of [parental] rights", contemplates a proceeding in which a petition seeking permanent custody and termination of parental rights has been filed or a proceeding in which the probate court has indicated that termination, an alternative which was not actually previously considered, has become a possibility.

2. There is no need to consider the validity of respondents' waiver of counsel since the Court of Appeals determined that, in this case, no right to court-appointed counsel existed under present case law and the Juvenile Court Rules.

3. The Fourteenth Amendment does not require court-appointed counsel for a respondent in every neglect or parental rights termination proceeding.

4. The absence of court-appointed counsel at the adjudicative phase of the proceedings did not render the proceedings fundamentally unfair. No error occurred in this regard.

5. The failure to appoint counsel at the statutory review hearings did not deprive respondents of fundamental fairness. No error occurred in this regard.

Affirmed.

M. E. DODGE, J., dissented. He would hold:

1. Adjudicative and statutory review hearings are hearings which may involve the termination of parental rights for which counsel must be appointed under JCR 1969, 6, and the due process clause, Const 1963, art 1, § 17.

2. In drafting JCR 1969, 8.1(A), providing the right to a jury trial for the hearing at which the probate court may formally take jurisdiction over a parent's child, the Supreme Court considered the adjudicative hearing to be a hearing "which may involve termination of [parental] rights", as that phrase is used in JCR 1969, 6.3(A)(2)(b).

3. The due process clause and JCR 1969, 8.2(C) and 6.3(A)(2)(b) required the probate court to appoint counsel on its own motion to represent respondents at the adjudicative and statutory review hearings.

4. The requirements of JCR 1969, 6.2 were not met in the present case since that rule requires the concurrence of a parent or guardian ad litem in any waiver of the right to counsel by children such as the respondents.

5. The absence of a request for counsel is not a voluntary and understanding waiver of the right to counsel.

6. Under JCR 1969, 6.2, the probate court was required to appoint counsel on its own motion and respondents did not waive this right by not requesting counsel at the adjudicative hearing.

7. Failure to appoint counsel for respondents at the adjudicative and statutory review hearings was not harmless error.

8. The probate court's order terminating respondents' parental rights should be reversed and remanded for further proceedings prior to which respondents would be provided with court-appointed counsel, pursuant to JCR 1969, 6.3(A)(2)(b), if determined financially unable to employ counsel.

### OPINION OF THE COURT

1. COURTS — SUPREME COURT DECISIONS — STARE DECISIS.

   A plurality decision by the Michigan Supreme Court in which a majority of the justices sitting concur in the reasoning binds the Court of Appeals and the trial courts under the doctrine of stare decisis.

2. PARENT AND CHILD — PROBATE COURTS — JUVENILE COURT HEARINGS — ADJUDICATIVE PHASE — RIGHT TO COUNSEL — JUVENILE COURT RULES.

   A probate court is required, at the outset of the adjudicative phase of juvenile court hearings, to advise the child and his

parent, parents, guardian, custodian or guardian ad litem of their respective rights to counsel; the court is obligated to advise the child and his parents, guardian or custodian at the first hearing before the court that they may be represented by counsel and that counsel may be appointed (JCR 1969, 6, 8.2[C]).

3. STATUTES — JUDICIAL CONSTRUCTION — STATUTORY CONSTRUCTION DOCTRINE.

Rules of procedure are governed by principles of statutory construction in order to ascertain the intent of the Supreme Court in promulgating the rules; the rules are to be interpreted in light of, and consistent with, the general purpose sought to be served; the Supreme Court is truly cognizant of the doctrine of statutory construction.

4. PARENT AND CHILD — APPOINTMENT OF COUNSEL — TERMINATION OF PARENTAL RIGHTS — JUVENILE COURT RULES.

The language "hearings which may involve termination of [parental] rights" contained in a Juvenile Court Rule regarding the appointment of counsel contemplates a proceeding in which a petition seeking permanent custody and termination of parental rights has been filed or a proceeding in which the probate court has indicated that termination, an alternative which was not actually previously considered, has become a possibility (JCR 1969, 6.3[A][2][b]).

5. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — DISPOSITIONAL PHASE.

A hearing to terminate parental rights is within the dispositional phase of the proceedings for the termination of parental rights.

6. CONSTITUTIONAL LAW — DUE PROCESS — FOURTEENTH AMENDMENT.

The process that is due process under the Fourteenth Amendment is not susceptible to precise definition and, therefore, must be determined on a case-by-case basis with reference to a particular situation by first considering relevant precedents and then by assessing the several interests at stake (US Const, Am XIV).

7. CONSTITUTIONAL LAW — FOURTEENTH AMENDMENT — COURT-APPOINTED COUNSEL — TERMINATION OF PARENTAL RIGHTS.

The Fourteenth Amendment does not require court-appointed counsel for a respondent in every neglect or parental rights termination proceeding (US Const, Am XIV).

DISSENT BY M. E. DODGE, J.

8. PARENT AND CHILD — ADJUDICATIVE HEARINGS — STATUTORY RE-
   VIEW HEARINGS — PROBATE COURTS — APPOINTMENT OF COUN-
   SEL — JUVENILE COURT RULES — CONSTITUTIONAL LAW.

   *Adjudicative and statutory review hearings in parental rights
   termination proceedings in probate court are hearings which
   may involve the termination of parental rights for which
   counsel must be appointed (Const 1963, art 1, § 17; JCR 1969,
   6.3[A][2][b], 8.2[C]).*

9. COURTS — PROBATE COURTS — TERMINATION OF PARENTAL RIGHTS
   — RIGHT TO COUNSEL — JUVENILE COURT RULES.

   *A probate court is required to advise parents of their right to
   counsel at the outset of the adjudicative hearing in parental
   rights termination proceedings; counsel shall be appointed on
   the court's own motion to represent indigent parents at hear-
   ings which may involve termination of their rights; the court
   may, upon request, appoint counsel to represent indigent par-
   ents at other hearings conducted under provisions of the juve-
   nile code or the Juvenile Court Rules (JCR 1969, 6.3[A][2][b],
   8.2[C]).*

10. PARENT AND CHILD — PROBATE COURTS — ADJUDICATIVE HEAR-
    INGS — TERMINATION OF PARENTAL RIGHTS — JUVENILE COURT
    RULES.

    *The adjudicative hearing is the first and necessary step in paren-
    tal rights termination proceedings; the probate court deter-
    mines in the adjudicative phase whether the child comes within
    the court's jurisdiction; if the court determines that it has
    jurisdiction, it proceeds, often immediately, with the disposi-
    tional phase; the adjudicative hearing may lead to the tempo-
    rary termination of the parents' custody and placement of the
    child outside of the home (MCL 712A.2[b]; MSA
    27.3178[598.2][b]; JCR 1969, 8.1[A]).*

11. COURTS — PROBATE COURTS — TERMINATION OF PARENTAL RIGHTS
    — JURY TRIALS — ADJUDICATIVE HEARINGS — APPOINTMENT OF
    COUNSEL — JUVENILE COURT RULES.

    *The Supreme Court, in drafting the Juvenile Court Rule provid-
    ing the right to a jury trial for the hearing at which the
    probate court may formally take jurisdiction over a parent's
    child, considered the adjudicative hearing a hearing "which
    may involve termination of [parental] rights" as that phrase is
    used in the Juvenile Court Rule regarding the appointment of
    counsel (JCR 1969, 6.3[A][2][b], 8.1[A]).*

12. Parent and Child — Probate Courts — Right to Counsel —
    Waiver of Rights — Juvenile Court Rules.

    *A child may voluntarily and understandingly waive the right to counsel; if the parent, guardian, or custodian is the complainant or petitioner, the guardian ad litem must concur in the waiver; if not, a parent, guardian, custodian, or guardian ad litem must concur; the absence of a request for counsel is not a voluntary and understanding waiver of the right to counsel (JCR 1969, 6.2).*

13. Courts — Probate Courts — Evidence.

    *Probate courts consider all hearings conducted pursuant to the statutes regarding the initial hearing for a determination of neglect, statutory review hearings and termination proceedings as a single continuous proceeding; evidence admitted at one hearing is to be considered evidence in all subsequent hearings (MCL 712A.12, 712A.19, 712A.19a; MSA 27.3178[598.12], 27.3178[598.19], 27.3178[598.19a]).*

*William F. Delhey,* Prosecuting Attorney, and *Barbara J. Debrodt,* Assistant Prosecuting Attorney, for petitioner.

*Patricia A. Steele,* for Jodie Perry.

*Jane M. Thurston,* for James Taylor.

Before: Danhof, C.J., and M. J. Kelly and M. E. Dodge,* JJ.

Danhof, C.J. In these consolidated cases, respondents appeal as of right from an order of the probate court terminating their parental rights to DeShawn Perry.

DeShawn was born on June 13, 1982, more than three months premature. He remained hospitalized for almost five months thereafter for treatment of respiratory, neurological, and ophthalmological problems. He was not expected to live and was considered a special needs child. Respondent Perry was 14 years old when she gave birth to

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

DeShawn. She resided with her mother, Roberta Perry. Respondent Taylor, the putative father, was 15 years old at DeShawn's birth. Respondent Taylor has not acknowledged paternity of the child.

On September 1, 1982, a hospital social worker referred DeShawn's case to petitioner, Department of Social Services. On October 19, 1982, petitioner initiated these proceedings by filing a petition seeking temporary custody of DeShawn. The petition alleged that DeShawn came within the provisions of the Probate Code because Roberta Perry refused to permit respondent Perry and DeShawn to reside with her, DeShawn required special medical care, and neither respondent had an adequate residence or plan for the care and support of DeShawn.

The following facts related to the adjudicative and statutory review hearings are gleaned from the parties' briefs and from the incomplete record which was filed here. On October 27, 1982, an adjudicative hearing was held before a probate court referee. After advising respondents of their right to counsel, the referee concluded that the probate court had jurisdiction and placed DeShawn temporarily in its custody. The referee ordered that DeShawn be placed in foster care upon his discharge from the hospital.

From October 27, 1982, until December 15, 1983, three DSS foster care workers and two administrators of a child care training-counseling-paid employment program attempted without success to assist respondent Perry in preparing herself to regain custody of DeShawn. An initial report reflects a strategy which considered termination of parental rights as an appropriate plan assuming no changes in respondents' circumstances. (See, Petitioner's Exhibit 3, Closing and Transfer Report, by Children's Protective Services worker,

dated October 29, 1982, p 2: "In my assessment termination of parental rights is an appropriate plan, assuming no changes".) A subsequent report described the strategy of petitioner as one working with the family in outreach therapy in order "to strengthen the family to make their *[sic]* own decisions for permanency placement" rather than having a social worker impose those decisions. (Petitioner's Exhibit 4, Initial Social Summary, submitted by Helen Dansby, Social Work Intern, undated, p 3). Later reports, entitled "Hearing Summaries", reflected petitioner's desire to continue working with respondents. However, after a visit with DeShawn on August 19, 1983, respondent Perry did not respond to petitioner's phone calls, letters and other efforts which sought to continue her visits with DeShawn.

On December 15, 1983, a petition seeking permanent custody and termination of respondents' parental rights was filed. The petition alleged abandonment and neglect by respondents. The petition was authorized at a hearing held in January, 1984. Respondents were present and the probate court appointed counsel for respondents. At a preliminary hearing held February 7, 1984, respondents' counsel contested the allegations of the petition. Counsel for respondent Perry made a motion to dismiss based on the following grounds: (1) respondents were entitled to counsel prior to the filing of the petition seeking permanent custody and the termination of respondents' parental rights, (2) respondents did not knowingly and voluntarily waive their right to counsel at the adjudicative hearing held October 27, 1982, and (3) failure to appoint counsel tainted the review hearings and the termination proceedings. The probate court denied the motion. A final dispositional hearing was held April 25, 1984.

On appeal respondents claim the existence of a due process right to court-appointed counsel at an adjudicative or a statutory review hearing, founded upon existing case law and the juvenile court rules.

For the source of their constitutional claim, respondents turn to the broad language contained in part II of Justice LEVIN's lead opinion in *Reist v Bay Circuit Judge,* 396 Mich 326, 339-346; 241 NW2d 55 (1976).[1] The doctrine of stare decisis[2] renders that broad language without precedential value because a majority of the justices sitting in *Reist* did not concur in Justice LEVIN's discussion of a *constitutional* right to court-appointed counsel at termination proceedings. Justice COLEMAN, writing separately, described part II as dicta "concerning an unauthorized issue". *Id.,* p 357. She stated that it presents "a broad and indistinct vista of 'liberties' to be protected and financial equalizing to be supplied". *Id.,* p 358. She noted that Michigan has long provided for appointment of counsel for indigents in every termination hearing and that the plaintiff in that case had counsel. *Id.,* p 357. The issue actually decided by the *Reist* Court concerned an indigent parent's right to *appellate* counsel and to a transcript of proceedings fur-

---

[1] Chief Justice KAVANAGH and Justice WILLIAMS concurred with Justice LEVIN. Justice RYAN did not participate in the decision. Justice COLEMAN, with Justice FITZGERALD concurring, agreed in the result reached in that case, but expressly disagreed with the necessity of a constitutional analysis to support the result. *Id.,* p 352. Justice LINDEMER concluded that no constitutionally protected right existed. *Id.,* pp 360-361.

[2] Under the doctrine of stare decisis, a plurality decision in which a majority of the justices sitting concur in the reasoning binds this Court and the trial courts. *Negri v Slotkin,* 397 Mich 105, 110; 244 NW2d 98 (1976); *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975). Stated another way, if a majority of justices sitting agree on the result, but not the reasoning, the lead opinion is not binding authority. *People v Jackson,* 390 Mich 621, 627; 212 NW2d 918 (1973); *People v Thomas,* 387 Mich 368; 197 NW2d 51 (1972).

nished at public expense in an appeal from an order terminating parental rights.[3]

Respondents also rely upon *In the Matter of Cobb,* 130 Mich App 598; 344 NW2d 12 (1983), and *In the Matter of Kenneth Jackson, Jr,* 115 Mich App 40; 320 NW2d 285 (1982) to support their constitutional claim. These two cases rely upon the dicta of *Reist v Bay Circuit Judge, supra,*[4] and are factually and legally distinguishable from the case at bar. In *Cobb, supra,* the issue was whether the probate court erred by its refusal to allow the respondent to revoke her initial waiver of counsel and to appoint counsel to represent her at the last dispositional hearing in which a final order terminating her parental rights was entered. By analogizing to the waiver of counsel principles established in criminal cases, the Court concluded that error occurred and reversed the final order. *Id.,* pp 600-601.

In contrast, the issue presented in *Jackson, Jr, supra,* pp 48-50, was whether a lack of counsel at two statutory hearings, held pursuant to the Michigan juvenile code, prejudiced the voluntary release for adoption executed by the appellant mother, a minor, under the Adoption Code. Noting the lack of a statutory right to counsel under the Adoption Code and distinguishing between the voluntary nature of adoption proceedings and the involuntary nature of juvenile code termination proceedings, the Court found no error and affirmed the probate court's order. *Id.,* pp 51-52. The Court

---

[3] Despite a right to a transcript of proceedings furnished at public expense, *Reist v Bay Circuit Judge, supra,* respondents have failed to provide a complete court file and transcripts of the adjudicative and statutory review hearings contrary to GCR 1963, 812.2, now MCR 7.210(B). Respondents provide no explanation for the missing portions of the record. None is gleaned from the existing record.

[4] See *In the Matter of Cobb, supra,* p 600, and *In the Matter of Kenneth Jackson, Jr, supra,* pp 49-50.

did not hold that a due process right to appointed counsel attached at a statutory review hearing, but merely observed that by following the *Reist* rationale one "should attach". *Id,* p 50. Neither case addressed the issue of an indigent parent's right to counsel at the outset of a juvenile code proceeding where only temporary, and not permanent, custody is sought. Thus, respondents' reliance upon these cases is misplaced.

Respondents next turn to the Juvenile Court Rules, specifically JCR 1969, 8.2(C)[5] and 6.3(A)(2)(b),[6] to support their claimed right to counsel.

At the outset of the adjudicative phase, the probate court is required to advise the child and his parent, parents, guardian, custodian or guardian ad litem of their respective rights to counsel as provided by JCR 1969, 6. JCR 1969, 8.2(C). The probate court is obligated to advise the child and his parents, guardian or custodian at the first hearing before the court that they may be represented by counsel and that counsel may be appointed under subrule 6.3. JCR 1969, 6.1(A).[7] In

---

[5] MCR 5.908(B)(3) contains language that is substantially similar to JCR 1969, 8.2(C).

[6] MCR 5.906(C)(2)(a) contains language almost identical to JCR 1969, 6.3(A)(2)(b).

[7] The Notes regarding JCR 1969, 6 which were published with the Juvenile Court Rules, but whose authorship is unidentified, provide in part:

"The purpose of the rule is to ascertain that notice of the right to counsel is given at the time of the hearing as provided by the Standards for Juvenile and Family Courts, approved by the National Council of Juvenile Court Judges, and as appears in *In re Gault,* 387 US 1; 87 S Ct 1428; 18 L Ed 2d 527 (1967). The provision with regard to waiver of the right to counsel is in relatively broad terms, leaving the matter to court discretion, provided the waiver by a child [in a court matter on the formal calendar] is concurred in by a parent, guardian, custodian, or guardian ad litem and is voluntarily and understandingly made. Appointment of guardians ad litem provided by Rule 5, again, is complementary to this rule." 381 Mich cxxiii-cxxiv.

this case, all parties agree that both respondents were present and advised of their right to counsel at the outset of the adjudicative hearing held before the probate court referee.[8] Notwithstanding the fulfillment of the probate court's duty to advise respondents of their right to counsel, respondents claim that the probate court was required to appoint counsel for them on its own motion at the adjudicative and statutory review hearings.

The rule governing appointment of counsel, JCR 1969, 6.3(A)(2),[9] provides:

".3 Court-Appointed Counsel (Formal Calendar). When proceeding on the formal calendar the court *shall appoint counsel* to represent the child, his parents, guardian, or custodian as follows:

"(A) When the Court Shall Appoint Counsel.

\* \* \*

"(2) Offense Against Child.

"(a) For the Child: Counsel shall be appointed for the child on the court's own motion, or upon request of the child or the parent, guardian, custodian, or guardian ad litem appearing in his behalf when it shall appear to the court the child's interests may be adverse to those

---

[8] Although no transcript of the adjudicative hearing accompanies the record on appeal, the following exchange is quoted in the guardian ad litem's brief, filed in opposition to respondent's motion to dismiss in the probate court:

"*Mr. Barrie [Probate Court Referee]:* First, as to your rights. The parents have a right to be represented by an attorney, an if you want an attorney and can't afford to employ one, the court will employ an attorney for you. Do you want an attorney?

"*Ms. Perry:* No.

"*Mr. Barrie:* How 'bout you Mr. Taylor?

*Mr. Taylor:* No."

At a later hearing, the probate judge noted that the referee had completed a form which indicated by a check in Box 15 that the referee had advised respondents of their right to counsel. The referee had further made a handwritten notation: "No attorney requested by either".

[9] MCR 5.906(C).

of a parent, guardian or custodian, or are not otherwise adequately represented.

"(b) For Other Parties: Unless waived as provided by Rule 6.2, *counsel shall be appointed* on the court's own motion *to represent the parents,* guardian, or custodian of the child charged with offense against the child *at hearings which may involve termination of their rights* when legal aid or public defender counsel is not available, and they are financially unable to employ counsel to represent themselves. The court may, upon request therefor, when legal aid or public defender counsel is not available and they are financially unable to employ counsel to represent themselves, appoint counsel to represent such persons at other hearings conducted under provisions of the Juvenile Code or these rules." (Emphasis added.)[10]

Respondents would give a broad construction to the language "hearings which may involve termination". They would interpret it to include an adjudicative hearing and subsequent statutory review hearings which are held upon a petition for temporary custody and which precede the filing of a petition seeking permanent custody and termination of parental rights.[11] Respondent Perry reasons

[10] The right to court-appointed counsel is described by the Notes, *supra,* 381 Mich cxxiv as follows:

"The right to court-appointed counsel is limited to proceedings on the formal calendar, following the recent New Jersey rules, and is spelled out as to matters in which the right obtains. While *Gault* and others delineate the right to counsel in delinquency matters, see, also,*Fritts v Krugh,* 354 Mich 97; 92 NW2d 604 (1958), as to scope of the right in neglect proceedings."

[11] In *Crist v New Jersey Division of Youth & Family Services,* 128 NJ Super 402, 416; 320 A2d 203 (1974), *modified* 135 NJ Super 573; 343 A2d 815 (1975), the court held that federal due process and equal protection guarantees encompassed a right to court-appointed counsel for indigent parents at a proceeding for temporary custody. No provision for court-appointed counsel for indigent parents existed in the New Jersey statutes concerned with dependent and neglected children. 128 NJ Super 405.

Compare, MCL 712A.17(3); MSA 27.3178(598.17)(3) which provides: "If the child or his or her parents desire counsel and are unable to

that, since the adjudicative hearing is the first and a necessary step in termination proceedings, counsel is required because the hearing may lead to the temporary termination of the parents' custody and placement of the child outside of the home.

Rules of procedure are governed by principles of statutory construction in order to ascertain the intent of the Supreme Court in promulgating the rules. *Issa v Garlinghouse,* 133 Mich App 579, 581; 349 NW2d 527 (1984). Because the Supreme Court is "truly cognizant" of the doctrine of statutory construction, we are especially guided by them here. *People v Lange,* 105 Mich App 263, 266-267; 306 NW2d 514 (1981). The rules are to be interpreted in light of, and consistent with, the general purpose sought to be served. *Issa v Garlinghouse, supra,* p 582.

In my view, the language of JCR 1969, 6.3(A)(2)(b), "hearings which may involve termination of [parental] rights", contemplates a proceeding in which a petition seeking *permanent* custody and termination has been filed or a proceeding in which the probate court has indicated that termination, an alternative which was not actually previously considered, has become a possibility.

Several reasons support this view. First, if the Supreme Court had intended to require court-appointed counsel at an adjudicative hearing in a neglect proceeding, it could have expressly said so. It did not. I believe that the interpretation advanced by respondents is one more appropriately left for the consideration of the Supreme Court, which may amend the rule to require court-appointed counsel at the earliest hearing.

Second, the fact that an adjudicative hearing is the first and a necessary step in a juvenile court

procure counsel, the court in its discretion may appoint counsel to represent the child."

neglect proceeding is of little moment. Not every adjudicative hearing precedes or results in a decision to terminate parental rights. While it is true that a juvenile court *may* terminate parental rights in every case,[12] that result is not a foregone conclusion.

Further, this Court has stated that "[a] hearing to terminate parental rights is within the dispositional phase of the proceedings". *In the Matter of Kantola,* 139 Mich App 23, 25; 361 NW2d 20 (1984), citing *In the Matter of Rebecca Oakes,* 53 Mich App 629; 220 NW2d 188 (1974), and *In the Matter of Taurus F,* 415 Mich 512; 330 NW2d 33 (1982), *reh den* 417 Mich 1104 (1983), *app dis* 464 US 923; 104 S Ct 323; 78 L Ed 2d 296 (1983), *reh den* 464 US 1064; 104 S Ct 747; 79 L Ed 2d 204 (1984).

Having determined that in this case no right to court-appointed counsel existed under present case law and the Juvenile Court Rules, there is no need to consider the validity of respondents' waiver of counsel.

The process that is due under the Fourteenth Amendment is not susceptible to precise definition and, therefore, must be determined on a case-by-case basis with reference to a particular situation by first considering relevant precedents and then by assessing the several interests at stake. *Lassiter v Dep't of Social Services of Durham County, North Carolina,* 452 US 18, 24-25; 101 S Ct 2153; 68 L Ed 2d 640 (1981), *reh den* 453 US 927; 102 S Ct 889; 69 L Ed 2d 1023 (1981). The Fourteenth Amendment does not require court-appointed counsel for a respondent in every neglect or parental rights termination proceedings. *Id.,* 452 US 32.

---

[12] Notice of the possibility of termination of parental rights is required to appear on every summons. JCR 1969, 7.2(B)(4), now MCR 5.907(B)(1)(d).

In deciding respondents' motion to dismiss for lack of court-appointed counsel at the adjudicative and statutory review hearings, the probate court considered the circumstances that existed at the time of the adjudicative phase. The probate court noted that both respondents were present, were both advised of their right to counsel, and neither requested an attorney. Further, respondents did not contest the initial neglect petition.[13] The probate court noted, in effect, that the presence of counsel at that stage of the proceedings could not have made a determinative difference. Moreover, the probate court appointed counsel as soon as respondents wanted counsel or as soon as the probate court felt it was necessary. Finally, the probate court noted that the initial petition did not seek termination. I would conclude that the absence of court-appointed counsel at this phase did not render the proceedings fundamentally unfair.

With respect to the absence of court-appointed counsel at the statutory review hearings, the record indicates that respondent Taylor did not attend any of the five statutory review hearings, and respondent Perry attended only one. Further, respondent Perry showed little interest and made minimal efforts to work with three DSS foster care workers and others over a 14-month period to prepare herself to regain custody of her son. I conclude that the failure to appoint counsel at the statutory review hearings did not deprive respondents of fundamental fairness.

In this case difficult circumstances presented legal and practical problems to petitioner, respondents and the probate court. Nonetheless, I would hold that no error occurred when the probate

---

[13] On appeal respondents do not challenge the allegations contained in the initial petition.

court did not appoint counsel for respondents at the adjudicative or statutory review hearings.

Affirmed.

M. J. KELLY, J., concurred.

M. E. DODGE, J. *(dissenting).* The majority opinion holds that the right to appointed counsel in parental rights proceedings in probate court does not arise until the final dispositional hearing. I respectfully dissent because I believe that adjudicative and statutory review hearings are hearings which may involve the termination of parental rights for which counsel must be appointed under JCR 1969, 6, and the due process clause, Const 1963, art 1, § 17.

JCR 1969, 8.2(C) requires the probate court to advise the parents of their right to counsel "as provided by rule 6" at the outset of the adjudicative hearing. JCR 1969, 6.3(A)(2)(b) governs the appointment of counsel for parents in parental rights termination proceedings. Under this rule, counsel *shall* be appointed on the court's own motion to represent indigent parents at "hearings which may involve termination of their rights * * *". JCR 1969, 6.3(A)(2)(b) also allows the court, upon request, to appoint counsel to represent indigent parents at other hearings conducted under provisions of the juvenile code or the Juvenile Court Rules. See *In the Matter of Jones,* 137 Mich App 152, 158; 357 NW2d 840 (1984).

The adjudicative hearing is the first and necessary step in termination proceedings.[1] In the adjudicative phase, the probate court determines

---

[1] The preliminary hearing is normally the first hearing in a termination case. JCR 1969, 4.2. In the present case, since the child had not already been taken into custody, JCR 1969, 4.2 did not mandate that a preliminary hearing be held. See *In the Matter of Kantola,* 139 Mich App 23, 25-26; 361 NW2d 20 (1984).

whether the child comes within the court's juris-
diction under MCL 712A.2(b); MSA
27.3178(598.2)(b). JCR 1969, 8.1(A). If the court
determines that it has jurisdiction, the court pro-
ceeds, often immediately as in the present case,
with the dispositional phase. Thus, the adjudica-
tive hearing—the step which begins termination
proceedings and is necessary for the court to for-
mally take jurisdiction—may lead to the tempo-
rary termination of the parents' custody and place-
ment of the child outside of the home.

The adjudicative hearing has been deemed such
an important step in the termination process that
trial by jury is provided for at this hearing. JCR
1969, 8.1(A). This strongly supports the conclusion
that parents are entitled to appointed counsel at
the adjudicative hearing. To read JCR 1969,
6.3(A)(2)(b) as not requiring appointed counsel at
the adjudicative hearing would render the right to
a jury trial at the adjudicative hearing meaning-
less for the great majority of parents facing termi-
nation of their rights. I can only conclude that in
drafting JCR 1969, 8.1(A), providing the right to a
jury trial for the hearing at which the probate
court may formally take jurisdiction over a par-
ent's child, the Supreme Court considered the
adjudicative hearing a hearing "which may in-
volve termination of [parental] rights". JCR 1969,
6.3(A)(2)(b).

In *Reist v Bay Circuit Judge,* 396 Mich 326, 346;
241 NW2d 55 (1976), three justices agreed that the
requirement of JCR 1969, 6.3(A)(2)(b), that counsel
be appointed for indigent parents "at hearings
which may involve termination", is constitution-
ally based "[b]ecause of the nature of parental
rights termination proceedings and of the basic,
fundamental nature of the parental relationship of
our society * * *". In discussing the due process

requirement that counsel be provided to indigent
parents, Justice LEVIN's opinion states the follow-
ing concerns:

"The state is the moving force in neglect and termi-
nation proceedings. That this is a confrontation be-
tween the state and an individual is '[a] circumstance of
great importance in determining a standard of fairness'.
*Danforth v State of Health & Welfare,* [303 A2d 794,
798 (Me, 1973)].
"Parents most often involved in neglect and termina-
tion proceedings are usually the least equipped, in
terms of intellectual and emotional resources, to re-
spond in such proceedings. 'The indigent are frequently
the least able to cope with government in its official
functions. See Paulsen, *Juvenile Courts, Family Courts,
and the Poor Man,* 54 Cal L Rev 694 (1966). The case at
bar was routine for the welfare workers and other
juvenile court staff. For the indigent mother, however,
the entire proceedings were incomprehensible.' *State v
Jamison,* 251 Or 114, 116-117; 444 P2d 15, 17 (1968).
"Studies indicate that termination of parental rights
occurs less frequently when parents are represented by
counsel. 'In a neglect proceeding the full panoply of the
traditional weapons of the state are marshalled against
the defendant parents. * * * The crucial issues in a
neglect proceeding may be difficult to grasp and conse-
quently difficult to refute for an uneducated and unso-
phisticated layman.' *Danforth v State Dep't of Health &
Welfare, supra,* p 799." 396 Mich 345 (footnotes omit-
ted).

In *Reist,* the Court did not distinguish between
the various phases of the hearing process leading
up to the termination of parental rights, *i.e.,* adju-
dicative, dispositional, or statutory review hear-
ings, because the opinion dealt with the appoint-
ment of appellate counsel. In *In the Matter of
Kenneth Jackson, Jr,* 115 Mich App 40; 320 NW2d
285 (1982), however, this Court stated that the due
process right to appointed counsel attached at
statutory review hearings:

"Appellant notes that the decision whether or not to file for termination of parental rights is often made at these statutory rehearings. Statutory rehearings are in fact a necessary step in termination proceedings where a child is within the temporary custody of the court and placed outside the home. In this sense, statutory rehearings fall within the meaning of a 'hearing which may involve the termination of [parental] rights'. Following the *Reist* rationale the due process requirement of right to counsel, therefore, should attach to such a hearing." 115 Mich App 49-50.

While I am cognizant of the majority's concerns with dicta and the doctrine of stare decisis, I believe that the cases relied on by respondents accurately state the law as it should be interpreted. That is, the due process clause and JCR 1969, 8.2(C) and 6.3(A)(2)(b) required the probate court to appoint counsel on its own motion to represent respondents at the adjudicative and statutory review hearings.[2]

Petitioner claims, however, that respondents waived their right to counsel by not requesting counsel at the adjudicative hearing. Respondents must be considered "children" under JCR 1969, 1.4(1) and MCL 712A.2; MSA 27.3178(598.2). JCR 1969, 6.2, which governs waiver of counsel, provides:

"A child may voluntarily and understandingly waive the right to counsel. If the parent, guardian, or custodian is the complainant or petitioner, the guardian ad litem must concur in the waiver; if not, a parent, guardian, custodian, or guardian ad litem must concur."

---

[2] I note that the proposed rule, MCR 5.915, provides that "the court shall appoint an attorney to represent the respondent *at all hearings* conducted pursuant to these rules other than a hearing under MCR 5.973(C) [review hearings]". (Emphasis added.) While the proposed rule is consistent with my position in that it clearly requires the appointment of counsel at the adjudicative hearing, it does not require appointed counsel for review hearings.

The requirements of JCR 1969, 6.2 were not met in the present case. JCR 1969, 6.2 requires the concurrence of a parent or guardian ad litem in any waiver of the right to counsel. This Court has not been provided with any record evidence that respondents' parents concurred in the waiver or that guardians ad litem were appointed on their behalf.[3] JCR 1969, 6.2 also requires a voluntary and understanding waiver.[4] The absence of a request for counsel is not a voluntary and understanding waiver of the right to counsel. Under JCR 1969, 6.3(A)(2)(b), the probate court was required to appoint counsel on its own motion and respondents did not waive this right by not requesting counsel at the adjudicative hearing.

I also conclude that failure to appoint counsel for respondents was not harmless error.[5] Respondents were both minors. DeShawn was removed from their custody before he was released from the hospital. It is readily apparent that termination was the goal from the day of the child's birth when respondents were urged to put the child up for adoption. The petition seeking temporary wardship stated that the action could lead to termination of parental rights at some time in the future

[3] See JCR 1969, 5.

[4] Although a verbatim transcript is not required for preliminary hearings, *In the Matter of Bennett,* 135 Mich App 559, 564-565; 355 NW2d 277 (1984), lv den 419 Mich 940 (1984), an adjudicative hearing is a hearing on the formal calendar which must be recorded under JCR 1969, 8.4, now MCR 5.908(D). In the present case, a tape recording of the adjudicative hearing was made in compliance with JCR 1969, 8.4. Neither the recording nor the form on which the probate court referee indicated that respondents had not requested an attorney is part of the record supplied to this Court. However, since the probate judge reviewed the recording and read pertinent portions of both the recording and the court file into the record supplied to this Court, I believe the record is sufficient for this Court's review.

[5] Nor do I believe that respondents waived their claim of error. The issue of failure to appoint counsel was raised by respondents' counsel at the first opportunity before the probate court after their appointment. Compare *Jones, supra,* p 155.

and each review summary stated that termination of parental rights was considered an appropriate plan. Yet, the record shows that respondents' interests were never adequately safeguarded. Despite the fact that respondents were not accompanied by a parent at the time of the adjudicative hearing, neither a guardian ad litem nor counsel was appointed for respondents. Thus, respondents relied on the social workers, petitioner's agents, for advice. As respondents point out, this placed the social workers in the difficult position of attempting to work with respondents while also being an integral part of the process and machinery whereby parental rights were terminated. The testimony of Barbara Eagle, one of the social workers assigned to DeShawn's case, shows that respondent-mother did not understand the proceedings and had to rely on Ms. Eagle's explanation of how DeShawn had been made a temporary ward of the court well into the termination process. Had respondents been appointed counsel, whose role was solely to protect respondents' interests, they may not have shown a lack of understanding and participation during the termination process.

Moreover, probate courts consider all hearings conducted pursuant to MCL 712A.12; MSA 27.3178(598.12) (the initial hearing for a determination of neglect), MCL 712A.19; MSA 27.3178(598.19) (statutory review hearings), and MCL 712A.19a; MSA 27.3178(598.19a) (termination proceedings) as a single continuous proceeding. *In the Matter of LaFlure,* 48 Mich App 377, 391; 210 NW2d 482 (1973). The critical point in the present case is that evidence admitted at one hearing is to be considered evidence in all subsequent hearings. *LaFlure, supra.* Both respondents in the present

case point to various inaccuracies between the
petitions, reports, and testimony at the final dispo-
sitional hearing. Since all of the circumstances
subsequent to the filing of the petition are consid-
ered by the probate court, I cannot conclude that
respondents were not harmed by failure to appoint
an attorney at the adjudicative and statutory re-
view hearings.

I would reverse the probate court's order termi-
nating respondents' parental rights and remand
for further proceedings prior to which respondents
would be provided with appointed counsel, pursu-
ant to JCR 1969, 6.3(A)(2)(b), if determined finan-
cially unable to employ counsel.