*In re* KEIFER

Docket No. 90708. Submitted December 2, 1986, at Detroit. Decided April 3, 1987.

Vincent D. Keifer, a minor, was placed in the protective custody of the Department of Social Services on July 14, 1982, after his biological paternal grandfather reported him abandoned in his care. At the time, Phillip L. Dick (hereafter respondent), the child's biological father, was incarcerated in a Michigan prison. Respondent was released from prison by January 12, 1983, the date of the first hearing on the DSS's petition for temporary custody in the Wayne County Probate Court, Juvenile Division. Respondent attended the hearing without counsel. Respondent was not advised of his right to an attorney and none was appointed. Respondent was not advised of his right to testify, call witnesses or cross-examine the witnesses called by the DSS, and he did not do so. The court thereafter ordered that the hearing be continued to a later date. Respondent did not attend any further proceedings in this matter. On October 17, 1983, the DSS petitioned the probate court to take permanent custody of the child and to terminate the parental rights of the mother, the legal father and respondent. A hearing on the petition was conducted on October 10, 1984. Respondent received notice of the hearing, and on August 9, 1984, wrote the probate court informing the court that he had been arrested in the State of Washington and might be unable to attend the hearing. Respondent also inquired if it was possible to postpone the hearing. The October 10, 1984, hearing proceeded as scheduled. On December 11, 1984, a second hearing on the petition for permanent custody was conducted and a foster care worker reported that he had been informed by respondent's Washington attorney that respondent wanted custody of the child but had been convicted and would be in prison until at least October, 1985.

REFERENCES

Am Jur 2d, Desertion and Nonsupport §§ 56 *et seq.*
Am Jur 2d, Parent and Child §§ 8 *et seq.*
Right of indigent parent to appointed counsel in proceeding for involuntary termination of parental rights. 80 ALR3d 1141.
See also the annotations in the Index to Annotations under Children; Custody and Support of Children.

Respondent was not sent a notice of the December 11, 1984, hearing. On February 6, 1985, the court appointed an attorney to represent respondent. On November 25, 1985, a third hearing on the petition for permanent custody was held. Respondent's attorney informed the court that respondent expected to be paroled soon and requested a continuance until respondent could appear. The probate court, Y. Gladys Barsamian, J., denied the request, heard closing arguments and concluded that there were sufficient grounds to terminate respondent's parental rights, as well as the rights of the child's mother and legal father. Respondent appeals therefrom by leave granted.

The Court of Appeals *held:*

1. Clear legal error occurred since respondent was not advised of his right to counsel at the first adjudicative hearing, on January 12, 1983, which he attended.

2. A probate court must, on its own motion, appoint counsel to represent indigent parents at hearings which may involve termination of their parental rights unless such right is expressly waived. Here, respondent did not waive such right and was deprived of his right to counsel. The appointment of counsel which did occur came too late.

The order of the probate court insofar as it applies to the respondent is reversed and the case is remanded for a new evidentiary hearing at which respondent is to be represented by court-appointed counsel.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — RIGHT TO COUNSEL — COURT RULES.

A probate court must advise parents at the first adjudicative hearing in a proceeding to terminate parental rights of their right to an attorney and that an attorney may be appointed for them if they are indigent; clear legal error occurs where such advice is not given at the first adjudicative hearing attended by the parents (MCR 5.906[A], 5.908[B][3]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — RIGHT TO COUNSEL — INDIGENTS — COURT RULES.

A probate court, on its own motion, must appoint counsel to represent indigent parents at hearings which may involve termination of their parental rights unless such right is expressly waived (MCR 5.906[C][2][b]).

3. APPEAL — CITATION OF AUTHORITY.

A party may not leave it to the Court of Appeals to search for authority to sustain or reject the party's position.

*John D. O'Hair,* Prosecuting Attorney, *Timothy*

*A. Baughman,* Chief of the Criminal Division Research, Training and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the Department of Social Services.

*Richard R. Harris,* for Vincent D. Keifer.

*Ina G. Zeemering,* for Phillip L. Dick.

Before: DANHOF, C.J., and SHEPHERD and W. A. PORTER,* JJ.

PER CURIAM. Vincent Don Keifer was born on October 11, 1981. On July 14, 1982, Wilbert Dick, the child's biological paternal grandfather, called Protective Services and reported that Vincent had been abandoned in his care. Vincent was picked up and taken to the Department of Social Services in whose care he has remained since that date. On November 27, 1985, the Wayne County Probate Court ordered that the parental rights of Vincent's mother, his legal father and his biological father be terminated. Thereafter, the probate court denied an untimely request for rehearing or reconsideration by Vincent's biological father, Phillip L. Dick, also known as Phillip Dumond (hereafter respondent). On August 5, 1986, we granted respondent's application for delayed appeal.

On appeal, respondent raises three issues, including a claim that he was denied his right to counsel during the termination proceedings. We find this issue to be dispositive and reverse.

When Vincent was initially placed in protective custody, respondent was incarcerated in a Michigan prison. However, by January 12, 1983, the date of the first hearing on the DSS's petition for temporary custody, respondent had been released.

* Circuit judge, sitting on the Court of Appeals by assignment.

Respondent attended the January 12, 1983, hearing without counsel and his appearance was noted on the record. The referee did not advise respondent of his right to an attorney and none was appointed. Respondent was not advised of his right to testify, his right to call witnesses or his right to cross-examine the witnesses presented by the DSS, and did not do so. Because certain witnesses were unavailable at that time, the court ordered that the hearing be continued at a later date. Respondent did not attend any proceedings after the January 12, 1983, hearing.

On October 17, 1983, the DSS petitioned the probate court to take permanent custody of Vincent and to terminate the parental rights of Vincent's mother, legal father and respondent.

A hearing on the petition was not conducted until October 10, 1984, almost a full year later. Respondent received notice of that hearing and on August 9, 1984, wrote a letter to the Wayne County Probate Court informing the court that he had been arrested on April 6, 1984, in Vancouver, Washington, on felony charges of "Assault II and Burglary II" and was incarcerated awaiting trial. Respondent asserted that he was "fighting" the charges, but that, if they were not dropped, he would be unable to attend the October 10, 1984, hearing. Respondent also inquired whether it was possible to postpone the date of the hearing.

The October 10, 1984, hearing proceeded as scheduled. At the conclusion, the referee indicated that there was a letter in the file from respondent and requested David Allasio, the foster care worker in charge of Vincent's case, to contact respondent to see if respondent could offer a plan for Vincent's care.

On December 11, 1984, a second hearing on the petition for permanent custody was conducted. At

that hearing, David Allasio testified that he had been unable to contact respondent but had spoken with a James Sowder, the attorney who was representing respondent in the criminal charges being brought against him in Washington. Apparently, respondent had been convicted of the charges by this time. Sowder informed Allasio that respondent had mentioned Vincent to him a couple of times and that respondent wanted custody. Sowder also told Allasio that respondent had received a maximum sentence of five years and would be in prison until at least October of 1985.

At the conclusion of the December 11, 1984, hearing, a third hearing on the petition for permanent custody was scheduled for February 6, 1985. However, it appears that that hearing was apparently either never conducted or that no evidence was presented on that date.

Respondent was not sent notice of the December 11, 1984, hearing. Apparently, the first direct response by either the court or the DSS to respondent's August 9, 1984, letter was a letter written by Allasio on December 12, 1984, the day after the second hearing on the permanent custody petition. Thereafter, respondent and Allasio corresponded frequently.

On February 6, 1985, the court appointed an attorney to represent respondent. Thereafter, respondent's attorney requested and was granted at least one continuance.

On November 25, 1985, a third hearing on the petition for permanent custody was conducted. At that hearing, respondent's attorney informed the court that respondent expected to be paroled in the very near future and requested another continuance until respondent could appear. The referee denied the request and entertained closing arguments, after which he concluded that there were

sufficient grounds to terminate respondent's parental rights, as well as the rights of Vincent's mother and legal father.

It is clear from the juvenile court rules that it is a mandatory requirement that the probate court advise parents at the first adjudicative hearing of their right to an attorney and that an attorney may be appointed for them if they are indigent. JCR 1969, 6.1(A), now MCR 5.906(A); JCR 1969, 8.2(C), now MCR 5.908(B)(3); *In re Perry,* 148 Mich App 601, 611; 385 NW2d 287 (1986), lv den 426 Mich 867 (1986). Since respondent was not advised of his right to counsel at the first adjudicative hearing, which was held on January 12, 1983, and which he attended, clear legal error occurred.

A second ground for reversal also exists. On its own motion, the probate court must appoint counsel to represent indigent parents at hearings which may involve termination of their parental rights unless such right is expressly waived. JCR 1969, 6.3(A)(2)(b), now MCR 5.906(C)(2)(b). There is no evidence in the record that respondent ever waived his right to counsel. On October 17, 1983, the DSS petitioned the court to take permanent custody of Vincent. After that date, two evidentiary hearings were conducted pursuant to that petition. There is no question that these hearings involved the termination of respondent's parental rights. Since no attorney was appointed to represent respondent during these hearings, it is clear that respondent was deprived of his right to counsel as afforded by JCR 1969, 6.3(A)(2)(b). While respondent was eventually appointed an attorney, the appointment came too late. As it turned out, respondent was unrepresented at the only hearings at which evidence was presented.

On its facts, the instant case is readily distinguishable from *Perry, supra.* In *Perry,* the respon-

dents were advised of their right to counsel at the outset of the adjudicative phase and were represented by court-appointed counsel throughout the dispositional phase.

Without citation to authority, the DSS argues that respondent's right to counsel is not absolute where the putative father has not taken any steps to establish paternity. This argument deserves little comment. A party may not leave it to this Court to search for authority to sustain or reject its position. *Wojciechowski v General Motors Corp,* 151 Mich App 399, 405; 390 NW2d 727 (1986). Moreover, the issue was not raised below. In fact, the DSS's petition for permanent custody affirmatively asserted that respondent was Vincent's biological father.[1] Moreover, there is no indication that the term "parent" as used in JCR 1969, 6 and 8 was not intended to apply to biological parents.

In light of our disposition, we find it inappropriate to address the issues of whether sufficient evidence was introduced to support the order terminating respondent's rights or whether adequate factual findings were placed on the record.

The order of the probate court insofar as it applies to respondent is reversed. The case is remanded to the probate court so that a new evidentiary hearing may be conducted, at which respondent is to be represented by court-appointed counsel.

---

[1] A letter in the lower case file written by an agent of the DSS stated that respondent should be assured that the DSS acknowledged respondent as Vincent's biological father and that a blood test was unnecessary. It is unknown whether this information was ever transmitted to respondent.