*In re* NASH

Docket No. 86576. Submitted June 3, 1987, at Detroit. Decided July 14, 1987.

Four minor children of Cheri Nash were made temporary wards of the Wayne County Probate Court following the conclusion of an adjudicative hearing on petitions alleging neglect filed by the Department of Social Services, Y. Gladys Barsamian, J. Respondent appealed, claiming that insufficient evidence was presented in support of a conclusion that the children were within the jurisdiction of the probate court, the adjudicative hearing was not held within forty-two days of the preliminary hearings as required by court rule, and that she was denied effective assistance of counsel.

The Court of Appeals *held:*

1. The evidence presented in support of the exercise of the probate court's jurisdiction over respondent's four minor children established well beyond a preponderance of the evidence that the children were neglected by respondent.

2. The record is unclear as to the reasons why the adjudicative phase of the hearings were not commenced within forty-two days of the date of the preliminary hearings as required by MCR 5.908(A)(1)(b). On remand, the probate court shall permit a record or other appropriate document to be generated setting forth the reasons for the delay.

3. Respondent's parental rights to her children were not in jeopardy at the time of the adjudicative hearing and for that reason she did not enjoy a right to appointed counsel. Thus, having no right to counsel, she may not claim ineffective assistance of counsel.

Affirmed in part and remanded.

REFERENCES

Am Jur 2d, Infants §§ 14-16, 29.

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

Validity, construction, and application of Uniform Child Custody Jurisdiction Act. 96 ALR3d 968.

Right of indigent parent to appointed counsel in proceeding for involuntary termination of parental rights. 80 ALR3d 1141.

1. COURTS — PROBATE COURT — JUVENILE DIVISION — JURISDICTION.

A probate court, at the adjudicative phase of hearings on a petition alleging neglect of a child by its parent, may assert jurisdiction over the child where a preponderance of the evidence supports the court's assertion of jurisdiction (MCL 712A.2[b]; MSA 27.3178[598.2][b]; MCR 5.908[A][1]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — COURT RULES.

An indigent parent involved in a hearing which may terminate his parental rights enjoys a right to competent court-appointed counsel only where a petition seeking the permanent custody of the child has been filed or where the probate court indicates that the termination of parental rights, if such an alternative was not previously considered, has become a possibility (MCR 5.906[C][2][b]).

*John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division Research, Training and Appeals, and *Kim D. Johnson,* Assistant Prosecuting Attorney, for petitioner.

*Ina Zeemering,* for the minor children.

*Carolyn A. Blanchard,* for respondent.

Before: WAHLS, P.J., and J. H. GILLIS and C. W. SIMON,* JJ.

PER CURIAM. Following a May 15, 1985, hearing in Wayne County Probate Court, four minor children of respondent, Cheri Nash, were made temporary wards of the court. Respondent's petition for review was subsequently denied by the probate court, and this appeal was filed as of right. We affirm.

First, respondent argues that the probate court erred in finding that sufficient evidence was presented to support the conclusion that the children were within the jurisdiction of the probate court.

* Circuit judge, sitting on the Court of Appeals by assignment.

The court based its exercise of jurisdiction in this case on MCL 712A.2(b); MSA 27.3178(598.2)(b), which provides in pertinent part: ·

> Except as otherwise provided in this section, the juvenile division of the probate court shall have:
>
> *   *   *
>
> (b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical, or other care necessary for his or her health or morals, or who is deprived of emotional well-being, or who is abandoned by his or her parents, guardian, or other custodian, or who is otherwise without proper custody or guardianship.
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, or other custodian, is an unfit place for the child to live in.

In the report and recommendation of the probate court referee transcribed eight days after the May 15, 1985, hearing, it was concluded that the allegations of neglect which appeared in petitions filed on December 27, 1984, and November 2, 1984, were sufficiently substantiated to permit the court to exercise its jurisdiction under the above statutory provision, and respondent's four children were accordingly made temporary wards by the probate court on May 28, 1985. In the referee's report, several findings of fact were set forth, including the following:

> It is a further finding that on [October 25, 1984], the Protective Services worker visited the mother's

home and the mother appeared to be under the influence of narcotics and stated that she was going to kill the child, Deborah.

It is a further finding that the mother has a prior record with Protective Services and with the Court for child neglect.

It is a further finding that the mother is frequently absent from the home for one or two weeks at a time and that the mother has a history of drug abuse and has been hospitalized several times for drug rehabilitation.

With regard to the child, Rosina, it is the finding of the Court that on December 11, 1984 a report of actual or suspected abuse was filed indicating the child had tremors and poor feeding which was due to withdrawal symptoms. That the child's urine was tested and found to be positive for phenobarbital dilatin and benzobiazepine [sic].

It is the further finding that the mother did not have an appropriate plan for the child and was not sure where she would live. It is the further finding that the mother has no home of her own and she lives from place to place. The mother is temporarily living with the maternal grandmother who is unable to provide adequate care for the child.

It is a further finding that the mother has a history of psychiatric problems and has been hospitalized several times for psychiatric care.

\* \* \*

It is the further finding that placement of the children in the home would be contrary to the [sic] welfare and reasonable efforts were made to prevent or eliminate the need for removal of the children from the home and these efforts have been unsuccessful and reasonable efforts were made to reunite the family and these efforts have not been successful.

The conclusion that the children in this case fall within the court's jurisdiction under the probate code was made as a result of the evidence presented at the May 15, 1985, hearing conducted

during the adjudicative phase of the child-protection proceeding. MCR 5.908(A)(1); *In re Youmans,* 156 Mich App 679, 682; 401 NW2d 905 (1986). During the adjudicative phase of a child-protection hearing, the applicable standard of proof is a preponderance of the evidence. MCR 5.908(C)(1); *In re Frasier,* 147 Mich App 492, 494-495; 382 NW2d 806 (1985). Our review of the record in this case convinces us that the evidence presented in support of the exercise of the court's jurisdiction over respondent's four minor children established well beyond a preponderance of the evidence that the children were neglected by respondent. Each of the findings of fact set forth above is strongly supported by the evidence adduced at the May 15, 1985, adjudicative hearing.

At the May 15, 1985, hearing, respondent herself was not present, although her attorney was. At that hearing, one police officer and three social workers from the Department of Social Services testified. Detroit Police Officer Jerry Savin testified that on October 25, 1984, he accompanied two social workers to respondent's home for the purpose of removing three of respondent's children. He stated that respondent, who appeared to be pregnant, was "extremely drunk" and that the house was "a shambles." Alice Johnson, a DSS protective services worker, testified that on October 25, 1984, she went to respondent's home in response to a report that respondent was beating her children, Deborah, Samantha, and Heather, and was threatening to kill them. According to Johnson, respondent appeared to be under the influence of drugs or alcohol, was verbally abusive toward the children, and threatened to kill her daughter Deborah. The children requested to leave with Johnson, and respondent indicated that she did not care whether the children were taken.

Johnson also stated that the home was cluttered and there was "practically no food" in the house, observing that there was only "some cheese and sausage and a couple cans of beans."

Kevin Houser, another DSS protective services worker, testified that after the children were placed in temporary care at the end of October, 1984, respondent moved from place to place, maintaining no stable address. Charles Miller, a DSS foster care worker, testified that when he began working on respondent's case in 1984, respondent was pregnant with her youngest child, Rosina. He stated that when Rosina was born with symptoms of drug overdose, a petition to remove the child from the hospital and place her in foster care was filed. Miller further testified that the children's maternal grandmother, with whom respondent would sometimes live, had not expressed to him an interest in caring for the children. When Rosina was born, respondent admitted to Miller that she had no stable residence at that time. Respondent's medical records, which have not been included in the file on appeal, were also admitted into evidence without objection by respondent's attorney. A DSS form signed by a medical doctor and apparently included in respondent's medical records indicates that at birth Rosina experienced tremors and poor feeding due probably to the withdrawal effect of drugs taken by respondent during pregnancy, and that Rosina tested positive for the presence of phenobarbital, dilatin, and benzodiazepine.

Moreover, the finding that respondent has a prior history with protective services and with the probate court regarding child neglect is certainly substantiated by the record. Respondent's involvement with neglect proceedings reaches back to at least 1981, when a petition was filed regarding

three of the children involved in the present case and a fourth child, David O'Quinn. Following a May 24, 1982, hearing, the probate court took temporary custody of the children on the basis of educational neglect, MCL 712A.2(b); MSA 27.3178 (598.2)(b), and placed them in respondent's home under the supervision of the DSS. It was established at the May 24, 1982, hearing that during the 1980-81 school year, Deborah, then thirteen years old, had missed 46½ days of school; Samantha, then nine years old, had missed 47 days; and Heather, then eight years old, had missed 106 days. In addition, during the 1981-82 school year, Deborah had enrolled on October 1, 1981, but had not attended school since November 19, 1981; Samantha had missed 48 days; and Heather had missed 56 days. Respondent, elaborating about her health, stated that she "couldn't even count" the number of times she had been in the hospital during the past year for unspecified illnesses. In between her hospital stays, she testified she would take what she characterized as "pain stuff" and "nerve pills."

We find that these facts established by a preponderance of evidence that respondent's children in this case fall within the court's jurisdiction pursuant to MCL 712A.2(b); MSA 27.3178(598.2)(b), on the basis that they were neglected. The three older children were without proper care, and the youngest child was born suffering drug withdrawal symptoms. *In re Baby X,* 97 Mich App 111, 116; 293 NW2d 736 (1980).

Respondent also suggests that the order of temporary wardship should be vacated on the ground that the forty-two-day rule of MCR 5.908(A)(1)(b) was violated in this case. That rule provides that, "[u]nless adjourned for good cause, the adjudicative phase must be heard within 42 days after the conclusion of the preliminary hearing, if the child

has been detained." Respondent states that the preliminary hearing on the petition regarding Deborah, Samantha, and Heather was scheduled for November 20, 1984; that a petition regarding Rosina was filed on December 27, 1984; that the two petitions were combined and the next court date was scheduled for January 15, 1985; that a court date was scheduled for April 22, 1985; and that on April 22, 1985, respondent signed a waiver of service form for the May 15, 1985, hearing. Respondent also states that transcripts from the proceedings conducted on November 20, 1984, January 15, 1985, and April 22, 1985, are not available. We note that at the July 2, 1985, petition for rehearing in this case, respondent's attorney acknowledged on the record that "there [have] been a couple of prior hearings in this matter and . . . [respondent] was present, and asked for a continuance . . . ." Nothing on the record indicates, however, whether in fact any or all of the adjournments were at respondent's request or whether any or all of them were supported by good cause. Thus, we remand on this issue for the limited purpose of permitting a record or other appropriate document to be generated setting forth the reasons for the delays and the conducting of the adjudicative hearing which apparently was held beyond forty-two days after the conclusion of the preliminary hearing.

Finally, respondent argues that she was denied the effective assistance of counsel on the basis that her attorney failed to request an adjournment of the May 15, 1985, hearing; failed to object to the introduction of certain hearsay testimony at the May 15, 1985, hearing; and failed to object to a violation of the forty-two-day rule contained in MCR 5.908(A)(1)(b). Respondent raises this issue without citing any authority regarding effective

assistance of counsel. See generally *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976), *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), reh den 467 US 1267; 104 S Ct 3562; 82 L Ed 2d 864 (1984), and *In re Rogers,* 160 Mich App 500; 409 NW2d 486 (1987). A statement of position without supporting citation is insufficient to bring an issue before this Court. *Temborius v Slatkin,* 157 Mich 587, 601; 403 NW2d 821 (1986); *People v Qualls,* 157 Mich App 552, 558; 403 NW2d 594 (1987). A party may not leave it to this Court to search for authority to sustain or reject its position. *In re Keifer,* 159 Mich App 288;. 406 NW2d 217 (1987). However, even if we were to address this issue, a remand would be unwarranted.

While it is true that an indigent parent involved in a hearing which may terminate his or her parental rights enjoys the right to appointed counsel, MCR 5.906(C)(2)(b), and that the right to counsel includes the right to competent counsel, *In re Trowbridge,* 155 Mich App 785, 786; 401 NW2d 65 (1986), it is also true that before the right to appointed counsel arises in cases such as this, there must be a petition seeking the *permanent* custody of a child or an indication by the probate court that the termination of parental rights—if such an alternative was not previously considered —has become a possibility. *In re Perry,* 148 Mich 601, 614; 385 NW2d 287 (1986), lv den 426 Mich 867 (1986). In this case, respondent's parental rights were not in jeopardy of being terminated at the May 15, 1985, hearing; rather, at issue was merely whether the allegations in the previously filed petitions were substantiated under MCL 712A.2(b); MSA 27.3178(598.2)(b), such that the probate court could properly exercise its jurisdiction over the four minor children. At such an

adjudicative hearing, there is no due process right to the assistance of court-appointed counsel. *In re Perry, supra,* pp 614-615. Having concluded that no right to the assistance of appointed counsel existed at the time of the adjudicative hearing, we need not determine the effectiveness of respondent's counsel at that hearing.

Affirmed in part and remanded for the limited purpose of permitting a record or other appropriate document to be generated setting forth the reasons for the adjournments of the adjudicative hearing apparently beyond the required forty-two-day period after the conclusion of the preliminary hearing. We do not retain jurisdiction.